# SUPREME COURT

OF THE

## STATE OF COLORADO

APRIL TERM, 1912

[No. 7808.]

## IN RE QUESTIONS OF THE GOVERNOR.*

1. TAXATION—*Assessments*—A tax upon property is of no validity unless supported by a valid assessment.

Only an officer, *de jure* are *de facto*, authorized by law, can make such assessment.

2. ——*Legislative Power*—The general assembly exercises supreme control over the collection of the public revenues, save as their powers are limited by the constitution.

---

*This case should have been published in Vol. 54 of the reports. Publication delayed by the failure of the reporter to receive the opinion.

(17)

3. STATE BOARD OF EQUALIZATION—*Tax Commission—Powers of*— The power of original assessment previously conferred by statute upon the State Board of Equalization was taken away by chapter 216 of the acts of 1911. By that statute the powers and privileges theretofore exercised by that board are vested in the State Tax Commission, as of the date when the act took effect.

The effect of the constitutional amendment providing for the initiative and referendum, upon the date when the statute became of force, not decided.

The supervisory powers of the board over the work of the state tax commission are expressly limited by the statute to a certain date. Since that date the State Tax Commission acts independently of the State Board of Equalization.

The power and duty of equalization are vested in the State Board of Equalization, and are not affected by the statute.

4. CONSTITUTIONAL LAW—*Statute Unconstitutional in Part*—A statute which, though containing provisions opposed to the constitution, remains, after rejecting these, complete, and capable of enforcement, according to the manifest intent of the legislature, must be sustained.

Effect given to the legislative assertion of this rule in the statute.

5. ——*Particular Statutes*—Chapter 216 of the acts of 1911 in nowise assumes to confer upon the tax commission the provisions of a former enactment by mere reference to its title, and is not in violation of either the letter or spirit of sec. 24, of art. V, of the constitution.

6. EXECUTIVE QUESTIONS—*When the Court will Respond To*— Under sec. 3 of art. VI of the constitution the court is not required to respond to a question as to the effect and rank of an appropriation for an administrative body not yet appointed.

But to end doubt and controversy the court declared that the appropriation for the salary and expenses of the state tax commission (acts 1911, c. 216, § 46) is of the first class.

*En Banc. In the Matter of the Opinion of the Justices as to the validity of Laws 1911, p. 612, creating and providing the duties of a Tax Commission.*

Mr. BENJAMIN GRIFFITH, Atty. Gen.

Messrs. ROGERS, ELLIS & JOHNSON, of Denver, *amici curiæ.*

WHITE J. The Governor of the state has certified that grave doubt exists as to whether the assessment or

certain classes of property, for the purpose of taxation, heretofore assessed by the State Board of Equalization, can be made by the latter body, or whether such assessment should be made by a Tax Commission appointed under the provisions of chapter 216 of the act of the general assembly of 1911. He has, therefore, pursuant to section 3 of article 6 of the constitution, propounded to this court for its answer thereto the following questions:

"First. In view of chapter 216 of the session laws of 1911, has the State board of Equalization, under existing law, power to make original assessment as heretofore made by it?

"Second. If a State Tax Commission is appointed, will it have powers, under chapter 216 of the session laws of 1911, to make original assessments heretofore made by the State Board of Equalization?

"Third. Is the appropriation for the Tax Commission a first-class appropriation under the laws of this state?"

As a tax levied upon property for governmental purposes has no validity unless supported by a valid assessment, and no one can make such assessment unless he be the officer, either de jure or de facto, authorized by law to do so, the public concern in and the necessity for determining the first two questions propounded is readily apparent, and the matter falls clearly within the rules hitherto prescribed a sufficient to invoke the extraordinary jurisdiction of this court, and renders it proper to comply with the executive request.

The State Board of Equalization is created by section 15 of article 10 of the constitution, and given the power to adjust and equalize the valuation of real and personal property among the several counties of the state, but no constitutional power of original assessment of any kind of property is conferred upon that body.

The latter power heretofore existing in and exercised by it was conferred by statutory enactment (section 5630 *et seq.*, R. S.), and may in the same manner be taken away and bestowed upon another qualified to exercise it. We held in *Ames v. People,* 26 Colo. 83, 95, 56 Pac. 656, that, notwithstanding the office of county assessor is provided for in the constitution, nevertheless, as that instrument did not specify the duties pertaining to the office, the legislature could properly confer upon "some other tribunal power to assess a class of property which the assessors cannot, in the very nature of things, so assess as to bring about its just valuation commanded by other constitutional provisions," and that inasmuch as the constitutional provisions creating the office of State Board of Equalization, and defining its duties, authorized other duties to be imposed upon it by law, the general assembly very properly bestowed upon it the power of original assessment. While the statute, there upheld, conferred the power of assessment upon a body created by the constitution, such body was not constitutionally invested with any power of original assessment. It would, therefore, seem, on principle, that, as no constitutional restriction exists against conferring such power upon an official or body not designated in the constitution, to follow that the legislative branch of the government, whose control over matters of taxation is supreme except as restricted by the constitution, could lawfully take the power in that respect away from the State Board of Equalization, upon whom it conferred it, and bestow such power upon another body or official. This the general assembly has done by the act of 1911, p. 612, c. 216. The act creates the Colorado Tax Commission, invests it with certain powers to be exercised and duties to be performed, subject to the direction and approval of the State Board of Equalization. It expressly confers upon the commission all the statutory powers and duties theretofore possessed by the State Board of Equalization, specially enumerat-

ing those pertaining to the making of original assessments for the purpose of taxation, "provided that the powers and duties of original assessment so transferred * * * shall continue to be exercised by the State Board of Equalization until June 15, 1911, after which they shall be exercised by the commission." Sections 40 and 41, c. 216, session laws 1911, p. 612. We are clearly of the opinion that the act of 1911 has taken away from the State Board of Equalization all power of original assessment. Moreover, it has created the office of Tax Commission, and, at least, vested in such office all the statutory powers, duties, and privileges formerly exercised by the State Board of Equalization in that respect. What other powers, if any, are vested in the office, need to not be here determined.

If, as suggested, the act has attempted to give such commission powers of equalization exercised by the state and the several county boards of equalization, it has failed in that respect. Such powers are constitutionally vested, and can be taken away only by constitutional, and not by statutory enactment. If provisions of the act can properly be construed as permitting the Tax Commission to do things in the matter of local assessments which would contravene the constitutional authority of county assessors, such provisions are necessarily noneffective, but even so, sufficient remains to make the act valid. Its general purpose is to empower and direct the Tax Commission to do only such things as the constitution permits. If every provision of the act, except those creating the office, fixing the tenure thereof, providing for the appointment of commissioners, and conferring upon such officials the power of making original assessments theretofore exercised by the State Board of Equalization, were stricken out or held unconstitutional, the act would still be complete in itself, and constitute a valid law.

It is an elementary rule of decision that "if, when the unconstitutional portion (of a legislative act) is

stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent wholly independent of that which was rejected, it must be sustained." *Newman v. People,* 23 Colo. 300, 309, 47 Pac. 278; *Frost v. Pfeiffer,* 26 Colo. 338, 343, 58 Pac. 147.

Moreover, such rule is to be applied to the act of 1911 by legislative command. Section 42 thereof expressly declares that, "each section of this act, and every part of each section is hereby declared to be independent sections and parts of sections and the holding of any section or part thereof to be void or ineffective for any cause shall not be deemed to affect any other section or part thereof."

It has been suggested that since the Commission is to exercise the powers and duties imposed upon it, subject to the direction and approval of the State Board of Equalization, an assessment, when made and approved, is essentially the work of the latter rather than of the former, and the power of original assessment may, therefore, be exercised by the State Board of Equalization as before the passage of the act. A sufficient answer to the suggestion is, that the act expressly limits the exercise of such powers by the State Board of Equalization during a period prior to a certain date, and declares that after such date such powers shall be exercised by the Commission.

Another suggestion is, that perhaps section 40 of the act violates section 24 of article 5 of the constitution. We do not think so. The constitutional inhibition prohibits the revival, amendment, extension, or conferring of the provisions of a law by reference to its title only. The act in question no wise attempts to extend to or confer upon the Tax Commission the provisions of any other act by reference to its title, and neither violates the letter nor the spirit of the constitutional restriction. The substantial effect of section 40 is to create an official entity to

perform certain statutory duties previously performed by a different entity.

We, therefore, conclude that if the act under consideration went into effect prior to the 15th day of June, 1911, the statutory powers of the State Board of Equalization ceased on that date, and if, by reason of the constitutional amendment providing for the initiative and referendum, the act did not go into effect until ninety days after the final adjournment of the general assembly, such powers terminated and ceased to exist when the act became effective.

The matter presented by the third question does not properly come within the extraordinary jurisdiction here invoked. Until a Tax Commission is appointed, and there are expenses incurred or salary earned, payable out of the appropriation, the question as to its class cannot arise. We will, however, answer the question, and thus end the matter. As appropriations to meet the ordinary expenses of the legislative, executive, and judicial departments of the state government constitute the first class (section 166, R. S.), it necessarily follows that the appropriation made by section 46 of the act of 1911 belongs therein. Taxation is an unending necessity to the maintenance of government, and the raising of revenue by such means necessarily incurs an extraordinary expense of the legislative and executive departments of the state government.

We, therefore, answer the first question in the negative, and the second and third in the affirmative.

CAMPBELL, C. J. not participating.