**STATE, ex rel LEMPERLE, Relator v. McINTOSH et, Respondents.**

Ohio Appeals, First District, Hamilton County.

No. 6415.   Decided July 3, 1944.

Mr. John M. McCaslin, Cincinnati and Mr. George A. Dornette, Cincinnati. for relator.

Mr. John D. Ellis, Cincinnati and Mr. Ed. F. Alexander, Cincinnati, for respondents.

## OPINION

By MATTHEWS, J.

This is an action in mandamus to compel the Board of Trustees of the Police Relief Fund of the City of Cincinnati to restore the relator to the pension list, and to pay to him $75.00 per month from the 1st day of March, 1943. The court of common pleas entered judgment, directing issuance of the peremptory writ prayed for. That is the judgment appealed from.

There is no dispute as to the facts. The relator became a member of the police department on February 17th, 1917, as a substitute patrolman. On March 29th, 1917, he was appointed as a regular patrolman. Prior to June, 1924, he was seriously injured while engaged in the performance of his duties as a policeman and on June 1st, 1924, he was duly declared permanently disabled for the further performance of police duties, and his honorable discharge and retirement on that ground was approved on that date.

At the time the relator was appointed as a substitute patrolman, the City of Cincinnati had a Police Relief Fund, established purusant to state laws which have been amended from time to time, and the present laws, are set forth in §§4616, et seq., GC. Since its establishment by the City of Cincinnati it has had a continuous existence.

At the time the relator was placed on the pension roll his status was controlled by section 43 of the Rules and Regulations then in force. That section was as follows:

"Any member of the Police Department, regardless of length of service, who, while in the performance of his official duty and in consequence thereof, either from extraordinary exposure or injuries received, has become permanently disabled, so as to incapacitate him from performing the duties of his office, when honorably retired by the Director of Public Safety, shall, upon the approval of the Board of Trustees of the Police Relief Fund, be paid from said fund a pension of Fifty Dollars ($50.00) per month."

Later, the section was amended to increase the pension to $60.00, and again amended to increase the pension to $75.00 per month. The relator drew these monthly sums until March 1st, 1943, when refusal to continue to pay was based on the fact that the Board had amended the rules and under the amended rules the relator was ineligible.

By the amended rule which was adopted on February 4th,

1943, provision was made for suspending payments to members who had been retired for disabilities. It was provided that the Board could require such a pensioner who had not attained the age of sixty or who had not completed 25 years of service before retirement, to undergo a medical examination. Should such a pensioner engage in a profitable occupation or should the examining physician certify that he was able to engage in such an occupation and "the amount earned or earnable" should exceed $175.00 or his salary as a police officer, whichever was larger, then the pension should be discontinued. Should his earned or earnable income, together with his pension, exceed that amount, then the pension should be reduced so as to bring the aggregate down to $175.00 per month, or the amount of his salary at the time of his retirement, whichever should be the larger. Should his earning capacity be changed, provision was made for modification of the pension to conform to the change.

On January 31st, 1944, while this action was pending in the common pleas court the rules were amended again, so as to make the amendment of February 4th, 1943, which was applicable only to disability pensioners, applicable to all pensioners under the age of sixty.

It is conceded that the relator is now and ever since his retirement has been unable to perform the duties of a police officer, because of the disability which resulted in his retirement. It is also conceded that he was and is employed in a private occupation and is earning more than $175.00 per month.

The trial court found that Rule 43C, as originally enacted was arbitrary, unreasonable and discriminatory, because it applied only to disability pensioners who had been retired before the effective date of §4628-1 GC, (the vested rights section) which was May 26th, 1937, and because it excluded consideration of unearned income in determining the status of the member as a pensioner, and that the amendment of Rule 43-C removed only one arbitrary distinction—the distinction between disability pensioners and others. Rule 43-C, was therefore declared unlawful and inoperative, and the writ was issued to enforce payment in accordance with the rule as it existed before the adoption of Rule 43-C.

We are not required in this action to consider to what extent, if any, §4628-1 GC, confers a vested right upon pensioners of the police fund, and the extent to which it restricts the power under §4628 GC, of the board to make rules and regulations applicable to pensions already granted "for distribution of the fund including the qualifications of those to whom

260

any portion of the fund, shall be paid." Section 4628-1 GC, by its terms only applies to pensions thereafter granted, which prevents its application to the relator's pension as it was granted before the effective date of §4628-1 GC.

Relator's counsel cite **Holmes v Board of Trustees, 93 Oh St 480**, in which the judgment was affirmed on "grounds stated in the opinion of the court of appeals. (5 Oh Ap 1)"; **State, ex rel. v Carter, 111 Oh St 526**; and **State, ex rel. Dieckroegger v Conners, 122 Oh St., 359**; and **State, ex rel. Eden v Kundts, et al., 127 Oh St 276**, as supporting his contention that the rules in force at the time of retirement cannot be altered to the pensioner's detriment, and says that these cases have never been overruled. It is true that they have never been overruled, but it is not true that they decide the point for which they are cited. Not one decided that the rules were immutable. In those cases the court was engaged in interpreting existing rules and not in determining the extent of the power to change them. This is clearly pointed out in the case of **Mell, et al. v State, ex rel. Fritz, 130 Oh St 306, at 308 and 309**, from which we quote:

"The Court of Appeals of Summit county denied the existence of such right and cited in support of its position **Holmes et al., Trustees v State, ex rel. Delaney, 93 Oh St 480**, 113 N. E. 1070; **State, ex rel. Dieckroegger v Connors, 122 Oh St 359**, at page 366, 171 N E. 586; and **State, ex rel. Eden v Kundts, et al., Trustees, 127 Oh St 276**, 188 N. E. 9. However, we do not deem the above cases authority for the determination of the issue here raised. We are here concerned with the right of the board to increase or decrease pensions and those already receiving them, which question was neither raised, discussed, nor determined in the cases above mentioned. As counsel for the board point out, the case of Holmes, et al., Trustees, v State, ex rel. Delaney, supra, concerned itself with the question of the right to revoke and suspend entirely the pension paid to a retired policeman, and this court held that the board had no such authority in view of the rules and regulations then existing. No rules were then in effect giving the board the right to thus suspend the pension and the act was consequently unauthorized. In the instant case, the board of trustees did act pursuant to existing rules and regulations governing the question of increasing or reducing the amounts of pensions.

"In the case of State, ex rel, Dieckroegger v Connors, supra, the rules of the board entitled the retiring police officer to a pension and the board acted contrary to and in violation of its own rules in denying him a pension. In the instant case, the board acted in conformity with its rules and regulations.

"The case of State, ex rel Eden v Kundts, supra, announces the doctrine that 'The right of a retired or dismissed police officer to a pension * * * is governed entirely by the rules adopted and in force at the date of his retirement or dismissal.' However, in that case, the bone of contention was the right of a retiring or dismissed police officer to a pension, which right is not questioned in this case. We are here concerned merely with the right of the board to change the amount of pensions previously allowed."

And in that case, the court directly held that a police pension was a gratuity and that the board had discretionary power to modify pension awards previously made by increasing or reducing the amount, provided, it was done reasonably and not arbitrarily.

Mell v Fritz, supra, was approved and followed in **State, ex rel. Lewis v Zupnik, et al., 131 Oh St 94,** and **State, ex rel. Carroll v McCarthy, 139 Oh St 654.**

So the real question in this case is whether rule 43-C is an arbitrary, unreasonable, or discriminatory action on the part of the Board of Trustees.

That the Board is not required to place all members of the police department in the same class and award to each a pension in the same amount and upon the same conditions is clear. The power to make rules and regulations necessarily imports the power to classify. Classification is the most inveterate mental habit. We could not think without resorting to it. Truax v Corrigan, 257 U. S. 312.

Constitutional provisions requiring all laws of a general nature to have uniform application or against discriminatory laws do not require laws to apply to every one within the state and to affect all in an identical manner Such constitutional provisions do not exclude class legislation, provided there is reasonable basis for the classification. If the law affects all similarly situated in the same manner, it satisfies the constitutional requirement.

In **8 O. Jur. 635,** the rule is stated that:

"A classification based on proper and justifiable distinctions considering the purpose of the law, or on distinctions that the court cannot pronounce unreasonable and purely arbitrary is valid;" and at pages **637** and **638:** "The test derived from the doctrines announced in both Federal and state courts relative to classification, is, according to the supreme court, whether there is a real and substantial distinction in the classification attempted, or is it merely artificial, arbi-

trary, or fictitious, made for the purpose of avoiding constitutional requirements?"

Unattainable exactness is not required in classification. It is said in 12 Am. Jur., 157, that: "In a classification for governmental purposes there cannot be an exact exclusion or inclusion of persons and things;" and at 164: "The Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time. Frequently, changes in statutory regulations must be made so as to take effect after a given date without applying rigorously to previously established conditions."

And as to the test to be applied by the court when a classification is assailed it is said in 12 Am. Jur., at 214, et seq.:

"In accordance with the basic rules of constitutional law underlying court review of legislation assailed as unconstitutional, in those cases in which laws are attacked as violating the equality requirements of the Federal and state Constitutions there is a presumption in favor of a legislative classification, of the reasonableness and fairness of legislative action, and of legitimate grounds of distinction, if any such grounds exist, on which the legislature acted. Hence, when the classification in a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. Although the presumption in favor of a classification is not conclusive and is rebuttable, courts may not declare it invalid unless viewed in the light of facts made known or generally assumed, it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators. All reasonable doubts must be resolved in favor of a classification made by the legislature, and it is the duty of the court to sustain it if any reasonable distinction can be found."

Let us consider the objections to Rule 43-C, and its amendments in the light of these rules.

(1) It is said that the distinction between "disability" and "length of service" beneficiaries is arbitrary and unreasonable and furnishes no valid basis for classification. However, it is manifest that there is a distinction. A disability beneficiary is usually much younger than a beneficiary because of length of service. The chances of a disability pensioner's general physical condition being such as to permit him to work

is much greater. The fact that there is no mathematically precise line that can be drawn between the two classes is no justification for judicial invalidation of a practical line drawn by the Board of Trustees.

The distinction has a basis in fact to support it and the court certainly cannot say that there is no conceivable basis for the Board's action—that it is arbitrary and unreasonable beyond a reasonable doubt.

(2) Next it is urged that because Rule 43-C applies only to those who had been placed on the pension roll prior to the effective date of §4628-1 GC (the vested rights' statute) it discriminates against those existing pensioners. As shown by the law already cited, the constitutional provisions against arbitrary class legislation have never been construed so as to invalidate legislation because it failed to operate retroactively. Legislation must have a beginning and to so construe the constitutions as to prevent a beginning would stifle all legislation. Furthermore, the effect of this argument would be to render unconstitutional §4628-1 GC, and not to invalidate section 43-C. The relator having only a pension—a gratuity— certainly cannot complain that the General Assembly failed to include him in legislation which would metamorphose his gratuity into a vested right.

(3) The next objection is that Rule 43-C only applies to pensioners capable of earning and that a classification based on the distinction between "earned and earnable" income, and income from other sources is purely arbitrary.

We do not think this objection is sound. Can any court say that a policy that has a tendency to force those to work who are capable is arbitrary and unreasonable? It would seem to be in accordance with sound public policy and a very salutary basis of classification.

A pensioner with an income from investments, not incapacitated for work, naturally falls in a different class, to be dealt with or not by the Board in its wisdom in a different way. Drawing a pension is not an inducement to him to withhold productive energy as it is to a pensioner capable of performing work. Furthermore, as a practical matter (and that is the way the court must view classification) the likelihood of a retired policeman having any substantial income from investments is remote and exceptional, and can be disregarded without destroying the classification.

(4) The fourth objection is that rule 43-C is invalid because it empowers a police surgeon to decide whether the pensioner is able to engage in a profitable occupation and "by inference to decide the amount of 'earnable income'."

Whether the pensioner is able to engage in a profitable occupation is a question of fact. That question must be answered in some way. As it depends upon the mental and physical condition of the pensioner a rule that requires an examination and report by a qualified physician would seem to be the appropriate and customary way of approaching the solution. Of course, the rule cannot be construed as giving the police surgeon's report a conclusive quality. The Board has no power to delegate its authority. The ultimate decision must be that of the Board under the statute on the physical and mental condition of the pensioner as well as the question of whether there is an opportunity for gainful employment within his capability.

We find nothing arbitrary or unreasonable in the rule itself. If it should be administered in an arbitrary and unreasonable manner, an aggrieved pensioner would not be without remedy. No such question of arbitrary administration arises in this case. The relator admits that he is capable of gainful employment and that he in fact is so engaged now and earning more than sufficient to justify the action of the Board in suspending his pension if Rule 43-C is valid.

(5) Finally, to avoid the application of the case of **State, ex rel. Carroll v McCarthy, 139 Oh St 654,** a distinction is sought to be drawn between earned income paid from taxation and income received from a private source. No authority is cited for any such distinction. The reason it was mentioned in that case was that the rule under consideration limited suspension to instances of pensioners accepting public employment. Rule 43-C contains no such limitation and we know of no principle of public policy that would justify the court in imposing such a limitation. The rule that makes a person ineligible to hold two offices whose functions are inconsistent has no application here. We believe an examination of the official rolls of the country would show many pensioners holding offices and enjoying the emoluments of the office and the pension without question. Whether they shall be permitted to enjoy both depends on legislation and not on any inherent distinction between public and private employment.

We find no merit in this contention.

For these reasons, the judgment is reversed, and the cause remanded with instructions to dismiss the action.

HILDEBRANT, J., concurs.
ROSS, P. J., dissents in separate memorandum.

. ROSS, P. J., dissenting.
I dissent from the opinion, for the reason that while §4628-

1, GC, does not directly apply to the pension being paid, the relator for the reason that such pension was granted before the effective date of the statute, the existence of this statute at the time of the change in the rules presents a situation resulting in unreasonable discrimination.

The effect of the statute and the amended rule is, to freeze beyond control of the trustees a pension granted after the effective date of the statute, (State, ex rel. Cline v Miller, et al., etc., 134 Oh St 445, 448) and permit unlimited control over one granted before the statute became effective. Two pensioners, otherwise entirely equal in qualifications and right, would be placed in entirely different categories.

I dissent for the further reason that the amendment to the rule applies only to earned income and not to all income, whether earned or received in another manner. I think the judgment of the Court of Common Pleas should be affirmed.