No. 17,830.

CITY AND COUNTY OF DENVER *v*. CENTRAL BANK
AND TRUST COMPANY.
(292 P. [2d] 738)

Decided January 23, 1956.

Mr. JOHN C. BANKS, for plaintiff in error.

Messrs. GORSUCH, KIRGIS, CAMPBELL, WALKER & GROVER, Mr. LEONARD M. CAMPBELL, Mr. RAYMOND J. CONNELL, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

THE controversy out of which the instant proceeding arises has been before this Court on two previous occasions. For a complete understanding of the historical background in connection with the present action we refer to *City & County of Denver v. McNichols,* 129 Colo. 251, 268 P. (2d) 1026, and *McNichols et al. v. City and County of Denver,* 131 Colo. 246, 280 P. (2d) 1096. The parties hereto present the issue of law now to be determined upon an "Agreed Statement and Record on Error," and, in view of the full statement of facts and pertinent ordinances in the opinions of this Court to which reference is hereinabove made, we deem it unnecessary to do more than identify very generally the nature of the case.

The City and County of Denver established a Retirement and Disability Plan for its employees, and authorized a Board of Trustees to administer the trust fund created to provide the benefits conferred upon the beneficiaries of said program. A provision of the ordinance related to the disposition of the trust fund upon termination of the plan. The plan was terminated, and certain questions arose in connection therewith which were decided in the cases to which we have referred.

Ordinances pertinent to the present litigation, generally, are the same as those heretofore considered, however

one sentence taken therefrom is the crux of the problem. It reads as follows: "All expenses of administration of the trust fund shall be paid by the City." Another provision of the ordinance which effected termination of the plan is as follows:

"That distribution of the Trust Fund held by the Board of Trustees of the said Retirement and Disability Plan shall be made to the members and beneficiaries thereof by the Board of Trustees in accordance with the provisions of Article 142 of the Revised Municipal Code, as amended, and that after September 19, 1953, the City and County of Denver shall not be liable for any further payments into the said Trust Fund."

The said trustees were unable to make distribution of the trust fund within "thirty days of such termination" as provided in the applicable ordinance, due to various complexities and litigation which involved the fund. April 30, 1954, the trial court appointed defendant in error bank as corporate trustee to administer and distribute the fund to those entitled to share therein.

September 16, 1955, the bank filed with the court a petition for an order directing the City and County of Denver to pay expenses, fees and costs of administration, which at that time amounted to approximately $31,000.00. The city contended that these expenses should be paid out of the trust fund, and should not be paid by the city. It based its objections to the petition upon the following grounds: (1) That the council in adopting the ordinance calling upon the city to pay all "costs of administration" did not intend to pay the expenses of distribution of the trust fund by a court appointed trustee, or the expense of litigating and determining all claims against the fund, and it did not intend to create a debt for any year which was a charge against the city's revenue for any future year, and, under the terms of the charter, could not do so; (2) that the ordinance terminating the plan provided that after September 19, 1953, the city should not be liable for any "future payments into the said trust fund" which

144

operated to repeal the previously enacted obligation to pay costs of administration, and no appropriation had been made for that purpose; and (3) that under section 204 of the city Charter the council could not impose liability upon the city to pay until a defenite sum of money had been appropriated for the liquidation of such liability, and that one council could not bind a succeeding council to make such appropriation.

The trial court heard arguments on the petition and the objections thereto, and adjudged that all costs, expenses and fees incurred in the distribution of the fund were expenses of administration within the meaning of section 17 of Ordinance 84, Series of 1946, and that such expenses should be paid by the city. The city, seeking reversal of the judgment, brings the case to this Court for review by writ of error.

## Questions to be Determined.

First: *Under the above stated facts, are the expenses and fees incurred in the preparation for distribution, and in the distribution, of the trust fund "costs of administration," within the meaning of the terms of the ordinance creating the plan?*

This question is answered in the affirmative. It is admitted that the fees and expenses incurred by the trustee bank were necessary, and that the charges represent the reasonable value thereof. It is clear from the entire history of the creation, continuance and termination of the retirement plan, that when retirement benefits were made available to municipal employees under the social security laws of the United States, the intention was to terminate the local program and place the employees under coverage of the national law. As a consequence of this transfer of coverage the city plan was terminated. The act which created the plan provided for its termination at the option of the city, and placed on the city the burden of defraying administrative costs. The costs of carrying out the plan of termination were just as necessary to the administration

of the ordinance of termination as were the expenses incurred in carrying out the program prior to such termination. The ordinance of 1953, in which it was provided that, "* * * after September 19, 1953, the City and County of Denver shall not be liable for any further payments into the said Trust Fund," did not relate to the payment of expenses of administration, but had reference to the monthly payment of $12.00 required of the city on behalf of each employee covered by the plan. The argument advanced by the city, that the subsequently enacted ordinance repealed the one which placed responsibility for administrative costs upon the city, is untenable.

Second: *Does the ordinance in question, in so far as it makes provision for payment of administrative expenses, violate the provisions of Articles 203 and 204 of the Charter of the City and County of Denver?*

This question is answered in the negative. Sections 203 and 204 of the city Charter read as follows:

Section 203:

"The council shall not order the payment of money for any purposes whatsoever, nor shall any warrant or other evidence of indebtedness issue in excess of the amount appropriated for the current year, and at the time of said order remaining unexpended in the appropriation of the particular class or department to which such expenditures belong, nor shall any liability or indebtedness incurred in any one fiscal year be a charge upon or paid out of the income or revenue of any other fiscal year."

Section 204:

"Neither the council nor any officer shall have authority to make any contract or do anything binding on, nor impose upon the city and county any liability to pay money, until a definite amount of money shall have been appropriated for the liquidation of all pecuniary liability of the city and county under such contract, or in consequence thereof. Such contract shall be *ab initio,* null and void as to the city and county for any other or further liability; *Provided,* first that nothing herein con-

tained shall prevent the council from paying any expense, the necessity of which is caused by any casualty, accident or unforeseen contingency, after the passage of the annual appropriation ordinance; and, second, that the provisions of this section shall not apply to or limit the authority conferred in relation to bonded indebtedness, nor to moneys to be collected by special assessments for local improvements."

In connection with these charter provisions counsel for the city argues: (1) That because the charter expressly prohibits the incurring of liability "in any fiscal year which shall be a charge upon or paid out of the income or revenue of any other fiscal year," the city council in 1946, which adopted the ordinance concerning liability for payment of administration expenses, could not bind the council in 1955 to appropriate funds to pay such expenses; (2) that the City and County of Denver cannot pay the fees and expenses in question for the reason that no appropriation for the payment thereof has been made and that "appropriation is indispensable to obligation."

The agreed record discloses that there is an amount in excess of $200,000.00 in the assets of the trust fund which is subject to the jurisdiction of the trial court and which will be distributed to the City and County of Denver. The funds in the possession of the trustee bank are not public funds. The position of the city in this connection was made clear by the following statement in its brief filed in *McNichols et al. v. City and County of Denver, supra:*

"The City contends that the money which it has already contributed to the Trust Fund no longer remains public money but that it has already been appropriated and paid over to a separate entity, the Board of Trustees of the Retirement Plan. The Board of Trustees holds such moneys as Trustee under an express trust for the members of the Retirement Plan, and the City could not withdraw the money or use it for any other purpose."

■ From the opinion of this Court in *Pensioners'*
*Protective Association v. Davis,* 112 Colo. 535, 150 P. (2d)
974, we conclude that the trust funds involved in the
instant case are not public funds; that said funds are sub-
ject to judicial control in this action; that until the court
relinquishes jurisdiction over said funds they are not
subject to councilmanic appropriation; and that sections
203 and 204 of the charter are not applicable to this liti-
gation.

The position of the city as disclosed by its brief is not
consistent in this connection. The summary of argu-
ment of counsel contains the following statement:

"Denver contends that the costs incurred in the court
distribution of the trust fund should be paid out of the
trust fund, *with Denver paying its pro rata share* accord-
ing to the amount of money which it receives from the
fund, and that such costs should not be paid solely by the
city." (Emphasis supplied.)

Stated another way, the city does not object to the
amount of the fees, the necessity for the services, or to
entry of the judgment directing that the expenses be
paid pro rata from the trust fund. Nor does it contend
that if a pro rata payment of fees and expenses should
be adjudged, the provisions of the charter concerning
creation of indebtedness or necessity of appropriation
would prevent payment by the city of an assessment
based thereon. Thus the argument of counsel is that pay-
ment of an amount less than the whole would be valid,
but payment of the whole would contravene the char-
ter. If the charter provisions on which the city relies
control the situation it would be unlawful for the city
to pay either sum.

The judgment is affirmed.