No. 20844.

ROSCOE CRAWFORD, JR., ET AL., *v.*
CITY AND COUNTY OF DENVER, ET AL.
(398 P.2d 627)

Decided January 25, 1965.

PHILIP HORNBEIN, JR., ROY O. GOLDIN, for plaintiffs in error.

MAX P. ZALL, TY R. WILLIAMS and CHARLES D. BROMLEY, for defendants in error.

*En Banc.*

MR. JUSTICE FRANTZ delivered the opinion of the Court.

THE validity of the retirement plan for employees of the City and County of Denver is challenged in this proceeding. In effect, we are asked by the plaintiffs in error, plaintiffs below, to affirm that part of the judgment of the trial court invalidating the composition of the Board selected to administer the retirement plan pursuant to the direction of the ordinance, and to hold, contrary to that which the trial court held, (1) that such invalidation nullified the entire ordinance, and (2) that otherwise the ordinance was invalid.

In their complaint the plaintiffs sought injunctive and declaratory relief. They alleged their capacities to seek such relief, and then, in detail, stated the respects in which they contended the ordinance establishing the retirement plan for employees of Denver was invalid.

We will consider these asserted grounds of invalidity of the ordinance only insofar as they are covered by the propositions advanced in plaintiffs' "Summary of Argument," which are set forth in their initial brief.

They charge in their "Summary of Argument":

"I. The trial court correctly held that the provisions of the ordinance establishing the Retirement Board are invalid. But the court committed error in attempting to fill the resulting vacuum by judicial legislation. The ordinance vests complete and exclusive power in the Retirement Board to administer its provisions. Without a validly constituted Retirement Board, there is no agency authorized to administer the pension program. Having eviscerated the ordinance by invalidating its administrative provisions, it was incumbent upon the trial court to declare the ordinance invalid in its entirety.

"II. The ordinance is invalid for the further reason

that it invidiously discriminates against employees in the lower wage brackets. Its formula for benefits is arbitrary, designed to benefit management and supervisory employees at the expense of rank-and-file employees. A pension ordinance is valid only if it serves the public interest. Private grants may not be made from public funds under the guise of pensions. The ordinance benefits only a privileged few; it serves no legitimate interest of the City, and is therefore not a valid legislative enactment.

"III. The ordinance is invalid for the further reason that it authorizes the Retirement Board to perform a judicial function, i.e., the 'settlement of disputes' and makes the decisions of the Board 'binding and conclusive on all interested persons.'

"IV. The Charter vests in City Council exclusive power to appropriate funds of the City. The provision of the ordinance which requires the City Auditor to transfer money into the Retirement Fund in such amounts as may be 'recommended' by the Retirement Board constitutes an improper delegation of legislative power. It is the responsibility of the Council to determine the purposes for which City funds shall be expended and the nature and amount of such expenditures. The attempt of Council to abdicate its power in favor of the Retirement Board contravenes the Charter.

"V. The ordinance is invalid for the further reasons that:

1. It permits the expenditure of funds of the Retirement Program without warrant drawn by the City Auditor, contrary to the provisions of the Charter.

2. It divests the City Treasurer of custody of the funds of the Retirement Program, contrary to the provisions of the Charter.

"VI. The ordinance is invalid for the further reason that it denies to qualified electors the right to vote for the two elected members of the Retirement Board, con-

trary to Article VII, Section 1, of the Colorado Constitution."

By its Charter, Denver has created the Career Service Board and empowered it to supervise, with some exceptions having no bearing on the questions before us, the recruitment, examination and certification of applicants for employment and for promotion in the Career Service. C5.25, Charter of the City and County of Denver. It is evident that the purpose of Career Service is the institution of a civil service merit system for the municipality. See *Fallon v. Nicholson*, 136 Colo. 238, 316 P.2d 1054.

Important to our problem is the provision of the Career Service Amendment which specifies that "the City Council shall by ordinance enact, after recommendations are made by the Career Service Authority, a classification and pay plan for all positions in the Career Service, based upon the duties of the several positions. The pay rates, including fringe benefits, shall be equal to generally prevailing rates and shall provide like pay for like work." C5.26, Charter of City and County of Denver.

Acting under C5.26 of the Charter, the Career Service Authority submitted to the City Council the results of its study of pay rates for municipal employees in the latter part of 1962. The Authority advised the Council that under prevailing rates, including fringe benefits, Career Service employees were entitled in the ensuing year to either a pay raise of 4.91 per cent, including paid holidays and Federal Social Security benefits, or a retirement plan by which Denver would pay into a retirement fund 5.21 per cent of the employees' base pay. It was intended that the latter alternative be integrated with Social Security and other benefits.

Denver chose the retirement plan, and it was effectuated by the enactment of Ordinance 388, Series of 1962, the ordinance under assault by the plaintiffs in this proceeding.

It shall be our purpose at this point to present an abridgment of the lengthy and detailed ordinance.

Sections 1 and 2 are definitive; the first defining words used in the ordinance, and the second defining the retirement dates available, according to the schedule, to the employees covered by the enactment.

Sections 3, 4, 5, and 6 provide for benefits under varying circumstances. Section 3 relates to retirement benefits to which contributing and non-contributing employees are entitled. It makes provision for benefits for retirement brought on by disability and for a formula to be applied to early retirement.

Methods for arriving at benefits for non-contributing and contributing members are as follows:

".3-1. Normal retirement of a non-contributing member. Upon retirement at or after his normal retirement date each non-contributing member shall receive a monthly retirement benefit equal to .375 of 1% of the first $400 of his monthly salary (averaged over the highest 5 consecutive years during the last 10 years of employment prior [to] his normal retirement date) plus .75 of 1% of such salary in excess of $400 multiplied by his credited service.

".3-2. Normal retirement of a regular member. Upon retirement at or after his normal retirement date, each regular member who became a regular member when first eligible to do so shall receive a monthly retirement benefit equal to .75 of 1% of the first $400 of his monthly salary (averaged over the highest 5 consecutive years during the last 10 years of employment prior to his normal retirement date) plus 1.50% of such salary in excess of $400, multiplied by his credited service."

Death benefits are secured by Section 4. Optional benefits are covered by Section 5. Section 6 takes care of those who withdraw from service before retirement age.

By Section 7, existing employees are afforded the

choice of being contributing or non-contributing members, and provision is made for a subsequent change from a non-contributing to a contributing member. It requires all new members to contribute. Those employees previously retired are excluded from the retirement plan under the terms of Section 8.

Section 9 declares it "to be the *policy* of the City and County of Denver that all contributions paid by the City and County of Denver under the Plan, as provided for below, are exclusively the property of those members, former members, retired members, or their beneficiaries who may be eligible for payments under the terms and conditions of the Plan, except that should the trust fund herein provided for be determined to be not exempt from Federal or state taxation, or should subsection * * 9-5, providing for selection of a trustee for the trust fund be determined to be unconstitutional, the contributions made by the City and by the members shall be returned by the trustee to the City and shall thereafter be held by the City, under the direction and management of the Retirement Board, in trust . . . " (Emphasis supplied.)

There shall be deducted monthly from the contributing member's pay and turned over to the trust fund the following:

"During the period January 1, 1963 through June 30, 1963, ½ of 1% of the first $400 of each month's salary plus 1% of such salary in excess of $400.

"During the period July 1, 1963 through December 31, 1963, 1% of the first $400 of each month's salary plus 2% of such salary in excess of $400. On and after January 1, 1964, 2% of the first $400 of each month's salary plus 4% of such salary in excess of $400."

The City Auditor shall transfer to the trust fund for members, whether regular or non-contributing, "during the calendar year 1963, 5.21% of the total gross pay of all members; subsequent to 1963, such amounts or percentage of the total gross pay of all members as is found

to be actuarially necessary in the light of annual recommendations of the Retirement Board."

The section further provides that the Retirement Board, with the approval of the Mayor and the Council, shall select a trustee, which "shall be a banking institution * * * having a capital and surplus in excess of Two Million Dollars." The trustee is empowered to receive, hold, invest and pay out moneys of the fund in accordance with the directions of the ordinance, as instructed by the Board. It is required to account as the Board may direct.

Section 10 provides for administration by the Retirement Board, composed of five voting members. One voting member is appointed by the Mayor, one by the Council, one by Judges of the District Court, and the remaining two are elected by the employees themselves. Two advisory, non-voting members are the Manager of Revenue and the Director of Personnel of Career Service.

Each voting member of the Board is "subject to removal at will" by the person or body which made the appointment. The two voting members elected by the employees are subject to removal "by secret ballot of the employees of the City under such procedures as shall be established by the Retirement Board." Appointment or election to fill vacancies is carried out in the same manner as appointments originally made or elections originally held.

The making of rules and regulatory measures "pertinent to the operation of the Retirement Plan" is a function of the Board. The Board has power to settle disputes, and to recommend amendments to the Council, provided the recommended amendments are accompanied by a report from an actuary "setting forth the effect of such amendment on future contributions by the City."

The last subsection provides:

".10-9. Decisions and determinations of the Retire-

ment Board not inconsistent with the provisions of the Plan shall be binding and conclusive on all interested persons."

Section 11 provides for the payment of the necessary administrative expenses. Section 12 arranges for the preliminary organization of the Plan. According to Section 13, the Plan may not be regarded as a debt of Denver, and the fund is the property of the employees. Therein is reserved the right in the Council to change or terminate the plan. Section 14 precludes anticipation, assignment, and alienation.

A severability section is set forth in Section 15 in these words:

"If any section, subsection, paragraph, sentence, clause or phrase of this article is for any reason held or decided to be unconstitutional, such decision shall not affect the validity of the remaining portions of this article. The Board of Councilmen hereby declares that it would have passed this article and each section, subsection, sentence, clause and phrase thereof, irrespective of the fact that any one or more sections, subsections, sentences, clauses or phrases might be determined unconstitutional."

In its findings of fact, conclusions of law and judgment, the trial court found that the ordinance "is not discriminatory, arbitrary, or unreasonable," but that considering its object, it "provides a fair and balanced retirement scheme for all employees affected."

The trial court found that the ordinance "improperly deprives the Mayor of the City and County of Denver of executive and administrative powers invested in him. It is the Mayor's function to appoint the members of the Retirement Board." Nor could the authority to appoint members be delegated to the Judges of the District Court and the City Council. And "the legislative function of determining the manner of election of the other two

members of the Retirement Board" was improperly delegated to the appointed members of the Board.

Other findings are:

"* * * that the Ordinance does not deprive the Treasurer of the City of custody and control of City funds. Nor does it authorize the disbursement of City funds without warrant of the auditor. When City funds have been earmarked and paid to the trustee of the Retirement Fund, the City Treasurer and the City Auditor perform their functions under the charter in releasing the funds to the trustees. Once the funds are in the hands of the trustee, they are no longer City funds and therefore belong to the trust fund to be held in trust for participants in the Retirement Program."

"* * * that Ordinance * * properly authorizes the Retirement Board to appoint and fix the duties and compensation of its employees. The Mayor, by appointing members of the Retirement Board, through his action, indirectly controls the duties and compensation of the Retirement Board."

"* * * that Ordinance * * does not contravene Article VII, Section 1, of the Constitution of Colorado. The election of members of the Retirement Board is not a matter in which the citizens at large of the City and County of Denver are entitled to participate."

"* * * that the provisions of Ordinance * * * are not indefinite, vague or uncertain."

"* * * that Ordinance * * * does not delegate to the Retirement Board the power to appropriate funds of the City. The Board only recommends that the funds be appropriated. The City Council appropriates funds for the Retirement Board."

"* * * that Ordinance * * * does not improperly invest judicial power in the Retirement Board."

"Denver Municipal Ordinance * * * contains a severability clause. The Court feels that the Ordinance is a proper one with the exceptions noted above. The im-

proper portions of the Ordinance are not so serious as to render the entire Ordinance invalid."

The trial court then "ordered, adjudged and decreed that Denver Municipal Ordinance No. 388, series of 1962, be put into effect with the exception of those sections as noted above."

The first and sixth contentions of plaintiffs in error may be treated together in view of our determination that the Board to be formed, in compliance with the directions of the ordinance, is invalid and ineffectual.

█ Certain charter provisions of Denver make it patent that the Mayor alone has the appointive power. We quote the appropriate charter provisions:

"A1.1 * * * The mayor shall be the chief executive; he shall possess, have and exercise, *all* the executive and administrative powers granted to the city and county of Denver by article XX of the constitution * * *, and *all* executive and administrative powers contained in the charter * * *, and otherwise existing by operation of law, except as hereinafter delegated to the departments hereinafter created, and except the powers granted to other elective officers by the charter * * *.

"C5.20-2 The heads of all departments, all officers and employes not by the amendment transferred or assigned to a department or office herein created, and *not by this amendment expressly provided for, shall be appointed* by the mayor * * *.

"C5.21 * * * Any and all vacancies in any elective or appointive offices, occasioned by death, resignation or otherwise, and not otherwise provided for, shall be filled by the mayor." (Emphasis supplied.)

██ The power to appoint members of the Retirement Board by virtue of the charter provisions just quoted is self-executing; the immediacy of their effect and the fact that no ancillary legislation is necessary to vest the Mayor with the appointive power meet the test necessary to determine the self-executing character of

these charter provisions. *Lyons v. Longmont,* 54 Colo. 112, 129 Pac. 198. Where a constitutional or charter provision makes execution thereof possible without ancillary legislation and consequently obligatory, it should be held that such provision is self-executing. *People v. Bradley,* 66 Colo. 186, 179 Pac. 871.

In the *Bradley* case, supra, this Court had before it the problem of determining which of two Civil Service Commissions should act: a Civil Service Commission appointed under the 1915 act or the Civil Service Commission appointed by the Governor pursuant to the 1918 constitutional amendment. Although the Constitution provided for a commission of three members "who shall be appointed for overlapping terms by the Governor . . . ," the realtors contended that legislation implementing the creation of a commission was necessary before a commission could serve under the Constitution. With this contention, this Court disagreed in these words:

"Second: If parts are to be taken, the provision that the three commissioners shall be appointed by the Governor is as manifestly capable of execution without ancillary legislation as any other part, indeed it has been acted upon and the commission is now in operation; it is, then, self-executing, and it was possible, and consequently right, for the Governor to appoint without ancillary legislative enactment."

An act of the legislature seeking to establish the county of Teller was under attack in the case of *Frost v. Pfeiffer,* 26 Colo. 338, 58 Pac. 147. The act contained provisions for the appointment of officers in an unauthorized manner, but the Court held that such provisions did not invalidate the act, since Article XIV, Section 9, of the Constitution of Colorado, empowering the Governor to make appointments, was self-executing and could "be resorted to independent of any provision in the act on this subject." See *State v. Clausen,* 107 Wash. 667,

182 Pac. 610; *Pitt v. Scrugham,* 44 Nev. 418, 195 Pac. 1101.

It is argued by plaintiffs in error that the Retirement Board has such extensive powers granted to it by the ordinance that the invalidation of the Board's existence nullifies the ordinance, because the ordinance cannot be executed as intended by the Council—that is, by this particular Board.

Would the Council have passed the ordinance had it known that the Board designated to execute its provisions would be one appointed by the Mayor?

■ The dominant purpose of the ordinance is the creation of retirement benefits for the employees of Denver. Its passage was motivated by the realization that such employees were entitled to a pay raise, or, in the alternative, to benefits which would equate such raise. The Council did not want the ordinance to fail in this respect, and, in order to assure that a retirement plan would remain intact, included in the ordinance a strong severability clause. This severability clause is a command that, if a complete valid law remains after invalid portions are stricken, the Court should so hold. *Greeley Trans. Co. v. People,* 79 Colo. 307, 245 Pac. 720; *In re Opinion of Justices,* 55 Colo. 17, 123 Pac. 660.

■ There can be no doubt that Denver was preoccupied with a retirement program, and that the method of appointment of the members of the Board to administer it was a subordinate consideration. Is there a complete, workable retirement plan without the Board as constituted by the ordinance? We hold that there is, since there was authority from the inception of the Retirement Plan for the appointment by the Mayor of a valid Board.

■ The general and applicable rule is stated in 82 C.J.S. 155, thus:

"If, when the invalid part is stricken, that which remains is complete in itself and capable of being executed

in accordance with the apparent legislative intent, or purpose, wholly independent of that which was rejected, it must be sustained to that extent . . ."

*State v. Clausen,* supra, is instructive. It shows how the power to appoint a commission of five citizens of the state was used to make complete an act of the legislature which created an industrial code, but which improperly designated that the commission to administer the code be made up in part of one member from the Senate and one from the House of Representatives of the state. The Constitution of Washington forbade appointment of such legislators during the term for which they were elected.

Language pertaining to our problem appears in the opinion, and reads thus:

"* * * The provision found unenforceable because of the ineligibility of a member of the Legislature to membership on the commission must be considered as directory, and easily separable from the remainder of the law without affecting its validity. Manifestly, one of the dominant ideas of the act concerning the membership of the commission is that 'the Governor shall appoint a commission, consisting of five citizens of the state of Washington,' and if, by reason of a deep interest in the important subject-matter, the Legislature suggest a rank or class denied by the Constitution from which a member of the commission should be chosen by the appointive power, such situation will in no sense deprive the Governor of the right and power to appoint some other citizen of the state, eligible to be a member of the commission, instead of the one determined to be ineligible."

There are cases in this state which strongly intimate that constitutional and charter powers become vested whenever a statute is enacted to which they would apply.

Thus, powers statutorily given to a Tax Commission, which powers under our Constitution properly belonged to the State Board of Equalization or to County Boards

of Equalization, remained with these Boards, and this Court held that "the act would still be complete in itself, and constitute a valid law." It went on to say:

"It is an elementary rule of decision that 'if, when the unconstitutional portion (of a legislative act) is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent wholly independent of that which was rejected, it must be sustained." *In re Opinion of Justices,* 55 Colo. 17, 123 Pac. 660.

In accord with this concept are the statements in *People ex rel. v. Letford,* 102 Colo. 284, 79 P.2d 274, and *Gordon v. Wheatridge Water District,* 107 Colo. 128, 109 P.2d 899. The contention was made in these cases that certain powers of county commissioners were constitutionally granted and that statutes improperly attempted to place these powers in directors of certain districts. Although not deciding the matter, this Court did say in these two cases:

"In any event, these matters have no bearing upon the *primary* validity of the organization of the district or the act authorizing it, and, at the most, the district administration would be subject only to the regulatory power of the county commissioners." (Emphasis supplied.)

Paraphrasing, we say that the primary validity of the Retirement Program remains unimpaired; that the authority of the Mayor to appoint the Retirement Board, charter granted, vested upon enactment of the retirement benefit ordinance; and that a complete, enforceable ordinance is in effect in Denver.

Plaintiffs in error contend that the ordinance as drafted "invidiously discriminates against employees in the lower wage brackets." They say that the formula for benefits is arbitrary, fashioned to benefit managerial and supervisory employees at the expense of rank-and-file employees. They charge that, under these circum-

stances, the retirement ordinance does not serve the public interest.

In the brief of plaintiffs in error, they cite evidence indicating the disparity between monthly pensions to be granted to those receiving a monthly wage of less than $400 and those receiving a monthly wage in excess of $400. To include social security benefits in order to equalize total benefits, they urge, is discriminatory.

Defendants in error point out that the Retirement Plan contemplates integration with Social Security and that, when both Social Security and state retirement benefits are considered, there exists no discrimination between the higher and lower paid employees. They point out that the ordinance classifies employees into two categories: those receiving monthly salaries of $400 or less and those receiving monthly salaries in excess of $400, and that the reason for such classification is founded upon the fact that the maximum amount used as the basis for Social Security is $400 per month.

Both sides submit figures to substantiate their contentions. On the one hand, plaintiffs in error say the disparity is so great that, in effect, part of the moneys paid in by the lower wage employee will be diverted to pay benefits to the higher salary employee. On the other hand, defendants in error supply figures which show that this is not true, and that the disparity works in favor of the employee in the lower wage bracket. That some disparity exists, one way or the other, appears certain.

There is a presumption "that the legislative body acted properly, and unless the classification is clearly arbitrary, the legislation must be sustained. A Court will not and should not set aside a statutory provision unless the classification is palpably arbitrary." *Brophy v. Employees Retirement System,* 71 Cal. App. 2d 455, 162 P.2d 939. See *Redmon v. Davis,* 115 Colo. 415, 174 P.2d

945; *Driverless Car Co. v. Armstrong*, 91 Colo. 334, 14 P.2d 1098.

In the *Brophy* case, the Court dealt with a pension plan adopted by San Francisco. Under the plan, there would be a reduction of that part of the pension provided by the contributions of the City and County to those retired employees who were under 62 years of age and whose income, over a certain amount, was derived from gainful employment. It did not affect those over 62, or those who were under 62 but retired because of disability received in the course of employment, or those under 62 whose income was not derived from gainful employment. The Court held that, in view of the presumption that the classification was reasonable and that the legislature acted properly, it would not, as a matter of law, hold that the classification was so arbitrary as to render the plan unconstitutional.

In *Hansen v. Public Employees Retirement System*, 122 Utah 44, 246 P.2d 591, the legislature classified on the basis of service in excess of 10 years and less than 10 years, and it was charged that such would result in an illegal discrimination in benefits. The Court held that discrimination was not unconstitutional "so long as there is some reasonable basis for differentiation between classes which is related to the purposes to be accomplished by the act. And it applies uniformly to all persons within the class."

The Appellate Court of Ohio, in the case of *State v. MacIntosh*, 75 Ohio App. 164, 60 N.E.2d 486, in meeting the challenge of unjustifiable classification of a pension plan, reminded that "unattainable exactness is not required in classification."

This Court cannot say that the classification is invalid unless it appears, beyond a reasonable doubt, that there is a capricious, arbitrary, and wholly unreasonable classification. "In the matter of classification, [the Council] has a wide range of discretion." *State v.*

*MacIntosh,* supra; *Driverless Car Co. v. Armstrong,* supra.

For their third point, the plaintiffs in error assert that the Retirement Board is given judicial functions which render the ordinance invalid.

 The ordinance authorizes the Retirement Board to settle disputes, and it provides that its decisions and determinations "not inconsistent with the provisions of the plan shall be binding and conclusive on all interested persons." Such a provision does not negate the power of courts to review the decisions and determinations of administrative bodies; it is tantamount to expressions frequently found in statutes and ordinances, that errors of law are subject to the scrutiny of courts. See *Slentz v. Fort Wayne,* 233 Ind. 226, 118 N.E.2d 484.

We hold that the ordinance, in respect to judicial functions, does not have the meaning or connotation which learned counsel attach to it in their brief.

 We shall treat together the fourth and fifth contentions of the plaintiffs in error. The provisions with regard to transfers of money by the city auditor into the Retirement Fund and the recommendations to be made by the Retirement Board are not improper, since standards and guides are provided for in the ordinance, by which these activities shall be carried on. *Bettcher v. State,* 140 Colo. 428, 344 P.2d 969.

 These funds are trust funds and are so designated by the ordinance. This Court has recognized the trust fund doctrine of retirement funds in recent cases.

Under the provisions of the ordinance, the treasurer of Denver pays the amounts involved to the trustee selected by the Retirement Board. During the period of appropriation, audit, and payment into the treasury, the City is dealing with public funds, but when such moneys are paid by the city treasurer into the retirement fund, they cease to be public funds and become private funds owned by the employees involved, held by a trustee.

*McNichols v. City & County of Denver,* 131 Colo. 246, 280 P.2d 1096; *City & County of Denver v. Central Bank & Trust Co.,* 133 Colo. 141, 292 P.2d 738. See *Pensioners Protective Association v. Davis,* 112 Colo. 535, 150 P.2d 974.

The judgment is affirmed.

MR. JUSTICE SUTTON not participating.