COULTER v. BOARD OF COUNTY COMMISSIONERS OF ROUTT
COUNTY.

1. The legislature has no constitutional power to provide by law that the terms of the district court of a single county shall be held every year at a place designated in the act, which is not and never has been the county seat of such county.

2. A juror who attends a court at a place where there was no legal authority for holding such court is not entitled to his fees.

3. When a statute is adjudged to be unconstitutional it is as if it had never been. And what is true of an act void *in toto* is true also as to any part of an act which is found to be unconstitutional.

THE facts are stated in the opinion.

Mr. J. A. COULTER and Mr. H. V. A. FERGUSON, for plaintiff.

Attorney-General THEO. H. THOMAS and Mr. S. S. DOWNER, for defendant.

BECK, C. J.   This is an agreed case, the purpose of which is to present, for the opinion of this court, the question whether the state legislature has the constitutional power to provide by law that the terms of the district court of a single county shall be held every year at a place designated in the act, which is not and never has been the county seat of such county.   The circumstances giving rise to this question grew out of an act of the last session of the legislature, approved April 8, 1885, providing for an annual term of the district court in Routt county, which had theretofore been attached to the county of Grand for judicial purposes.   The objectionable provision is as follows: "In the county of Routt a term of the district court shall be held at the town of Yampa, in said county, commencing on the fourth Monday of August in every year."   Laws 1885, p. 179.

The county of Routt was established by an act approved January 29, 1877.   The act defines its boundaries, and by section 3 provides "that, until the county seat

shall be located as provided by law, the court for the county and the county offices shall be held at such place in the county as may be designated by the county commissioners, and, at the next general election after the passage of this act, the qualified electors of the said county of Routt shall select a county seat by ballot." It also provides, by section 7, that the county of Routt shall be attached to the county of Grand for senatorial, representative and judicial purposes. Eight years after the organization of the county, during all of which time it remained attached to Grand county for judicial purposes, it was provided by law that it should have a district court. The legislature, however, inserted the unusual, and, the defendant says, the illegal, provision that all the terms provided for should be held at a certain town, which was not the county seat.

The first objection urged against the validity of the act is that it is a special law, and as such inhibited by section 25 of article V of the constitution. In so far as the act relates to Routt county, it is certainly special; but that portion thereof which provides for the holding of terms of the district court in said county does not come within the ban of the constitution. Detaching a county from another county to which it has been attached for judicial purposes, and providing it with a district court, do not come within any of the enumerated cases of section 25; nor do such provisions come within the purview of the concluding clause of said section, viz.: "In all other cases where a general law can be made applicable, no special law shall be enacted." For the purpose just stated a general law would have been inapplicable, and, if the legislature had stopped here, no provision of the act would have been obnoxious to the objections now urged. It was wholly unnecessary to name a place for the holding of the terms of the district court, inasmuch as the place for holding the same, in every county in the state, had previously been fixed by a general law, which was

then in force. Gen. St. ch. 31, § 1, p. 389. Designating the
town of Yampa as the place where the court should be
held, may, therefore, be treated as a separate and independ-
ent provision. It is not so connected with the subject-
matter of the act, to wit, the establishment of an annual
term of court in said county, as to make it a dependent
or necessary provision, without which the presumption
would obtain that the legislature would not have granted
the court without the provision fixing permanently the
place for holding its sessions. The subject-matter of the
act, then, does not necessarily fall, although the objec-
tionable provision be declared invalid. Cooley, Const.
Lim. 178; *People, etc. v. Rucker*, 5 Colo. 455.

Can that portion of the act designating the town of
Yampa as the permanent location of the court be sus-
tained? The plaintiff relies, in support of the validity of
this provision, upon the proposition that the fixing of the
place where the court shall be held was within the discre-
tion of the legislature, and consequently cannot be ques-
tioned by this court. We have held that the question
"whether a general law can be made applicable, or
whether a special law is authorized for a purpose not
falling within the enumerated or prohibited cases, is pe-
culiarly a legislative question;" that "the same presump-
tion obtains that the members of the general assembly
will exercise an honest and conscientious judgment in
such cases as prevails concerning the judgments of
courts." Consequently it is to be presumed, upon the
passage of a special statute, that, in the judgment of the
law-makers, after full and fair investigation, a general
law would not effect the purpose designed to be accom-
plished. *Carpenter v. People*, 8 Colo. 116; *Brown v. City
of Denver*, 7 Colo. 305. But the jurisdiction of the
courts to review acts of the legislature, supposed to have
been passed under the assumption of discretionary pow-
ers, has ever been maintained. While the presumptions
of good faith and sound judgment attach to the acts of

legislative assemblies, it is well known that they are liable to commit grave mistakes.   To hold that the enactment of a provision involving a palpable abuse of discretion, or that the assumption of discretionary power, in a case clearly inapplicable to the rule, cannot be judicially reviewed and annulled, would, in our judgment, subject the courts to well-merited criticism for inefficiency in the performance of their judicial functions.   The present instance furnishes an example of what would be the result of such a doctrine.   Here is a provision in a legislative enactment which appears to us to violate both the letter and the spirit of the constitution.   Whether it was an attempt to exercise a supposed discretionary power, or a mere error of law, is immaterial.   The existing state of the law, as well as the legislation of both the territory and state, clearly demonstrate that not only a general law was applicable for the purpose, but that the general laws in force at the time of the passage of this act were amply sufficient, and that no provision whatever was necessary on the subject.

The territorial legislature, by an act approved January 10, 1868, provided that the "*terms of the district court shall hereafter be held in the said districts at the county seats of the several counties therein, as the said county seats now are or hereafter may be established.*"   Laws 1868, p. 264.   Changes were subsequently made, from time to time, as to the organization of the several judicial districts, the number of terms of court to be held in the several counties, and the times of holding the same; but in every instance the requirement that the courts should be held at the county seats of the several counties was reenacted or retained.   See acts approved February 11, 1870 (Laws 1870, p. 59); February 9, 1872 (Laws 1872, pp. 89–91); February 13, 1874 (Laws 1874, pp. 88, 90, 92); February 8, 1876 (Laws 1876, p. 66).   The act last mentioned was passed by the last territorial legislature that ever convened.

The state of Colorado was admitted into the Union under its constitution on the 1st day of August, 1876, by the proclamation of the president of the United States of that date. The general assembly of the state, at its first session, which commenced November 1, 1876, by an act approved December 18, 1876, repealed the territorial acts relating to the judicial districts and the holding of district courts therein, and enacted new provisions concerning the same. It divided the state into *four* judicial districts, instead of *three*, as provided by territorial regulations; apportioned thereto the several counties of the state, assigning to each district certain counties; and made provision for the holding of courts in the respective counties. The first section of said act re-enacted the same provision in respect to the *place* where the courts should be held, which was contained in the territorial act of January 10, 1868. It reads as follows:

"Sec. 1. Terms of the district court in the respective judicial districts in the state shall, after the year 1876, be. held in said districts at the county seats of the several counties therein, as the county-seats now are or may hereafter be established, commencing on the days following in each and every year." Gen. Laws, 349.

At the legislative session of 1881 the state was again reorganized in respect to the district courts, the number of judicial districts being increased to *seven.* Again it was enacted, by a law approved March 5, 1881, that the sessions of said courts should be held at the county seats of the several counties. Laws 1881, p. 105.

Thus the law stood in the territory and state of Colorado for a period of seventeen years, during all of which period the permanent location for the holding of terms of the district courts was fixed by general law applicable to the whole commonwealth. This general law was in force at the time of the passage of the act in question. The only exceptions to the above rule were upon the organization of new counties, when the legislature some-

times provided that, until a county seat should be selected by the citizens of the new county, a certain place designated should be *temporarily* the county seat; or, in some instances, a place was designated for the holding of courts until a county seat should be selected by the citizens. For this court to hold, in the light of the foregoing legislation, and in face of the constitutional provision respecting special legislation, either that a general law was inapplicable in the present case, or that the legislature of 1885 was vested by the constitution with discretionary powers to decide that a special enactment was necessary to fix a permanent location for the sessions of the district court of Routt county other than at the county seat, would be not only to reverse the previous rulings of this court, but to uphold a palpable infraction of the constitution. We have never gone to the extent of holding, as some courts have, that the exercise by the legislature of authority to pass a special law precluded the courts from reviewing such action, and, even if found to be clearly in conflict with constitutional provisions, without jurisdiction to declare it void. The presumptions are always in favor of the validity of such acts, and questions of doubt are to be resolved in favor of the legitimate exercise of the power to enact them.

That the permanent location for the holding of the district courts in the counties of the state can be fixed by general laws has been demonstrated by the acts of the legislature itself, during a long term of years, which acts overcome all presumptions that a departure is necessary in the case of a single county. No such provision as that complained of exists as to any other county in the state, and, it being the duty of the county commissioners to provide accommodations for the holding of courts, it is not only unnecessary in this case for the legislature to make such provision, but would seem to be an interference with the functions of the county authorities.

There are other considerations which bear with some

force against the constitutionality of this portion of the act in question. Among the enumerated cases of section 25 of the constitution, concerning which special legislation is in express terms prohibited, is the following: "Regulating county or township affairs." One of the most important constitutional guaranties secured to each and all counties of the state is freedom from the evils of special legislation, whereby county affairs and county government are likely to be continually disturbed by useless and unwholesome enactments. It is well known that bills for legislation of this character are often introduced to satisfy the caprice or selfish interests of individuals, and when they pass, it is by reason of a lack of interest of members whose constituents are not affected by the proposed measures. Perhaps the strongest illustration of the value of this guaranty that could be given would be the different effects produced on county government by the observance of the general laws of the state, on the one hand, and of the same as qualified by the special provision under consideration, on the other hand.

At the time of the approval of the special enactment concerning Routt county the statute required each organized county to provide, at its own expense, a suitable court-house and a sufficient jail, and other necessary county buildings, and to keep them in repair. Gen. St. p. 255, § 524. The people of a county were permitted to locate permanently their county seat by a majority vote of its legal voters. Id. p. 291, § 683. By a previous act of the same session it had been provided that the sheriff, county clerk, county treasurer and clerks of the district and county courts were required to keep their respective offices at the county seat, and in the offices provided by the county. If offices had not been provided, then it became the duty of the county commissioners to provide offices for them, and said officers were required to keep their respective offices open during the usual business

hours of each day, Sundays and legal holidays excepted, and all books and papers required to be in their offices were to be open to the examination of any person. Laws 1885, p. 157. The district courts of the several counties comprising the seven judicial districts of the state were required to be held at the county seats of the several counties. Gen. St. p. 389, §,1062. Even the county commissioners were required to hold their meetings at the county seats. Gen. St. p. 256, § 531.

Here was a system applicable to every county in the state, arranged with reference to convenience and economy. The business of each county — judicial, ministerial and executive — was to be transacted at the court-houses and offices provided by the county authorities at the county seats. Note how the symmetry of the system is marred, and the *regulating* of county affairs is interfered with, by the special provision of April 8, 1885. The records and files of the district clerk's office must be removed to the place named in the special act for the holding of the district court, whenever a term of court is to be held. The clerk must close his office in order to attend the sittings of the court, or he must employ a deputy. Prisoners in jail must be transferred to such place for trial. A place must be provided for the sessions of the court. A secure place must be provided for the temporary confinement of the prisoners. Now, each one of the aforesaid acts involves a wholly unnecessary and useless expense to the county. If the county has observed the law, it has a court-house, a jail, and public offices at the county seat, where the court is required by the general law to be held. If not, temporary buildings must be provided there by the county commissioners. It would seem, therefore, that the special provision for holding the sessions of the court at a place not the county seat has the effect to "regulate county affairs" by a special act, and, having such effect, that it is expressly inhibited by the constitution. It is cer-

tainly a gross interference with the lawful regulation of county affairs.

We are aware that a different conclusion was reached in the case of *Whallon v. Circuit Judge*, 51 Mich. 503, but the facts, the laws of that state, and the constitutional provision involved, were so dissimilar to the corresponding points in the present controversy as to distinguish the cases. A portion only of the terms of the circuit court were required to be held in a place not the county seat, and the objection to the change of location as to them was based upon the following constitutional provision, being section 8 of article X of the Michigan constitution, viz.: "No county seat once established shall be removed until the place to which it is proposed to be removed shall be designated by two-thirds of the board of supervisors of the county, and a majority of the electors voting thereon shall have voted in favor of the proposed location, in such manner as shall be prescribed by law." The court held, upon a review of the legislation of the state, that such courts were not required, in all cases, to be held at the "county seats," but may be held at the "seat of justice;" that these terms are not synonymous, and may refer to different locations; also that there was no constitutional provision requiring the circuit courts to be held at the county seats, and that no general law had ever been enacted by the legislature containing such a requirement. The decision, therefore, cannot be regarded as a precedent upon the question here involved.

Having decided that that portion of the act of April 8, 1885, is unconstitutional and void which requires all sittings of the district court of Routt county to be held at a place not the county seat, the remaining question to be determined is, how does this adjudication affect the claim of the plaintiff? The judge of the first judicial district attempted, in compliance with the act of the legislature, to hold a term of court at the town of Yampa, in August, 1885. The plaintiff was summoned to attend such term

as a petit juror, and did attend the same, serving in the capacity mentioned for the period of five days, for which he received from the clerk a certificate, showing that there was due him for said service the sum of $12.50. He presented this certificate to the board of county commissioners for allowance and payment, which they refused, on the ground that the law under which the court was held was unconstitutional, and the proceedings a nullity. We are of opinion that the action of the commissioners must be sustained. A court held either at a time or place not authorized by law is held to be no court; from which it would follow that its proceedings are of no legal force whatever.

Mr. Cooley lays down the rule thus: " When a statute is adjudged to be unconstitutional, it is as if it never had been. Rights cannot be built up under it. Contracts which depend upon it for their consideration are void. It constitutes a protection to no one who has acted under it, and no one can be punished for having refused obedience to it before the decision was made. And what is true of an act void *in toto* is true also as to any part of an act which is found to be unconstitutional, and which, consequently, is to be regarded as having never, at any time, been possessed of any legal force." Cooley, Const. Lim. p. 188; *Hollingsworth v. Barbour*, 4 Pet. 466. When a legislative act, under and by virtue of which the functions of a court are assumed and exercised, is adjudged unconstitutional and void, the assumed jurisdiction of the court falls with the act, and with it the proceedings of the court as well. Freem. Judgm. § 120; *Reed v. Wright*, 2 G. Greene, 15. As laid down in *Voorhees v. Bank*, 10 Pet. 477: " If there is a total want of jurisdiction, the proceedings are void, and a mere nullity, and confer no right, and afford no justification; and may be rejected when collaterally drawn in question."

Our conclusion upon the whole case is that the act in question is valid to the extent of providing an annual

term of the district court for Routt county, and the *time* for holding the same. The general law provides the place where said term shall be held, viz., at the county seat, and that the act is void in so far as it fixes a different place for holding the court.

It follows from the views expressed in this opinion that the plaintiff cannot recover. Judgment will therefore be entered for the defendant, for costs.

*Judgment for defendant.*

HELM, J., concurs in the conclusion.