## No. 20,472.

PUEBLO JUNIOR COLLEGE DISTRICT, ET AL. *v.*
ROBERT DONNER, SR., ET AL.
(387 P. [2d] 727)

Decided December 23, 1963.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK
E. HICKEY, Deputy, Mr. RICHARD W. BANGERT, Assistant,
Mr. PERRY E. WILLIAMS, Messrs. PHELPS, FONDA, HAYS

and WILLS, Messrs. TARTER and TARTER, for plaintiffs in error.

Mr. DONALD E. LA MORA, for defendants in error.

*En Banc.*

MR. JUSTICE HALL delivered the opinion of the Court.

PRESENTED here for review is a judgment of the District Court of El Paso County, Colorado, holding that House Bill No. 360, Session Laws 1961, Chapter 219, page 688, is unconstitutional, and enjoining the Board of County Commissioners of El Paso County from levying or collecting any taxes pursuant to said bill or disbursing any taxes so levied or collected.

Parties in the trial court and here are (1) three individuals owning real property in El Paso County, said property being subject to ad valorem taxes; we refer to these parties as the property owners; (2) the Board of County Commissioners of El Paso County, to whom we refer as the board; (3) the State Board of Education; (4) six junior colleges. In addition to the foregoing the attorney general appeared pursuant to Colorado Rules of Civil Procedure, Rule 57 (j), and filed an answer.

The action was commenced by the property owners in behalf of themselves and all others in El Paso County similarly situated. They sought a declaratory judgment to the effect that House Bill 360 is unconstitutional and void. The other parties, defendants or intervenors, contend that the statute is constitutional.

Section 1 of House Bill 360 provides:

*"Legislative declaration.* — The purpose of this act is to provide a method by which the junior college districts shall receive from the counties of residence of students not resident of the junior college districts a portion of the cost of maintaining such students in the junior col-

leges. This act shall be liberally interpreted to accomplish this purpose."

In substance the bill provides that boards of county commissioners, of counties that are not a part of any junior college district, levy an ad valorem tax on all taxable property in the county; revenue derived from such tax to be used for the purposes set forth in the foregoing legislative declaration.

The bill provides that the State Board of Education shall, on or before October 1 of each year, notify the boards of county commissioners of the amount of revenue to be raised by each. Provision is made whereby the State Board of Education arrives at these amounts as follows: Each person on registering as a nondistrict student must make a notarized statement to the college in which he registers, naming the county of which he is a resident; each junior college must, not later than July 15 of each year, certify to the State Board of Education: (a) the total student credit hours produced by students who are residents of Colorado attending said college during the next preceding school year; (b) "The total student credit hours produced by all nondistrict students by counties of residence who attended the junior college during the next preceding school year." With this information the State Board of Education, by multiplying the number of full-time-equivalent nonresident students from any county by 500 determines the dollar amount such county must furnish and which amounts are certified to the commissioners. Of the amount furnished, 60% is for current operating expenses and 40% for buildings and equipment.

The bill further provides that (1) the commissioners levy the tax; (2) the treasurer collect the tax and pay the money into "the *county* junior college tuition fund" (created by the bill); (3) that the county treasurer on warrant of the board of county commissioners transfer the tax to the state treasurer for deposit in "the state junior college tuition fund" (created by the bill); (4)

that the State Board of Education draw warrants against "the state junior college tuition fund" directing the state treasurer to pay over to each of the junior colleges its proportionate share of all such taxes so levied and collected.

The only authority for the levy and collection of the taxes is found in Section 8, which provides:

"For the purpose of paying each county's share of the cost of nondistrict students attending junior colleges in Colorado as defined by this act, it shall be the duty of the board of county commissioners of each county to levy, *except in those counties levying in excess of the statutory limits for general fund purposes and welfare purposes and levying 12 mills under the public school foundation act,* at the same time that other taxes are levied, a tax upon all taxable property in the county, *or in that portion of that county lying outside of a junior college district,* sufficient to raise the amount certified in accordance with section 7 (d) less any remaining balance in the county tuition fund. The board of county commissioners of any county may transfer other county funds not otherwise committed to the county tuition fund which may have the effect of decreasing the amount of the levy necessary or which may make it unnecessary to levy a special tax." (Emphasis supplied.)

Counsel for the property owners urge that provisions of the act are in conflict with the Constitution of the State of Colorado and the Constitution of the United States. Among other things the property owners charge that Section 8 directs the levy of taxes in violation of Article X, Section 3, of the Constitution of Colorado, which provides:

"*Uniform taxation—individual exemption.*—All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and

personal; * * * " and Article X, Section 6, which provides:

"All laws exempting from taxation, property other than that hereinbefore mentioned, shall be void; [not mentioned is property in counties exempted by Section 8 of the Act] * * *."

The trial court held the act to be unconstitutional and void. All parties, except the property owners, are here by writ of error seeking reversal.

■ From the record it appears that the State Board of Education, pursuing procedures outlined above, determined that El Paso County, for the school year 1960-1961, had 83.9 "full-time-equivalent students" resident of El Paso County attending junior colleges in Colorado. El Paso County, in order to meet its obligations imposed by the act, as determined by the State Board of Education, would have to raise $41,950.00, requiring a levy of 0.2 mills on real property in El Paso County having an assessed valuation of $216,462,960.00.

Under the bill, other counties, if they had levied taxes " * * * in excess of the statutory limits for general fund purposes and welfare purposes and levying 12 mills under the public school foundation act, * * * " are not obligated to levy any tax or to contribute anything to any junior college, no matter how many residents of such counties attend junior colleges.

Here, the various boards of commissioners have no discretion as to the amount of the levy, the purpose for which the money is to be raised or the expenditure of the same. County commissioners' functions under the bill are purely administrative, doing exactly what the legislature says — fix a levy based on a formula provided by the state, collect the tax and turn it over to the state. The tax provided for is a state tax to raise revenue for state purposes. The commissioners, in making the levy, are performing a purely ministerial duty under direction of the state.

When residents of El Paso County enroll in a junior

college, their so doing becomes the dominant factor in determination of the ultimate tax to be levied and collected. Students by registering in junior colleges determine the amount of revenue to be raised by each county to provide for the "current operating expenses" and for "the use of buildings and equipment" of the college of their choice.

Counties or parts of counties included in a junior college district have no obligation to do any of the foregoing. Property owners in such counties do not pay taxes based on the number of county students attending.

By Section 8 of the act other counties and property owners therein are relieved of the duty to levy, collect or pay taxes; yet residents of such counties may attend a junior college of their choice and the college receives nothing by reason of their attendance.

It is difficult to conceive of legislation which, if followed, would lead to more flagrant violation of constitutional provisions than that contained in Section 8 of the act, which expressly provides for discrimination and inequality, which expressly exempts certain property from taxation, contrary to the above quoted constitutional inhibitions.

The taxing power is a legislative function.

In 84 C. J. S. 53, Taxation, § 7:

"Subject to the fundamental or organic limitations on the power of the state, discussed supra § 6, the legislature has plenary power, and is vested with a wide discretion, with respect to taxation. The legislature alone has the right and discretion to determine all questions of time, method, nature, purpose, and extent in respect of the imposition of taxes, the subjects on which the power may be exercised, and all the incidents pertaining to taxation from beginning to end. * * * ." See, also, *City and County of Denver v. Lewin,* 106 Colo. 331, 105 P. (2d) 854.

In 84 C. J. S. 76, Taxation, § 22, it is said:

"Generally equality and uniformity of taxation are

necessary under the provisions of the constitutions of many of the states which contain in whole or in part the requirements that taxation shall be equal and uniform, that all property in the state shall be taxed in proportion to its value, that all taxes shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax, or that the legislature shall provide for an equal and uniform rate of assessment and taxation. Such requirements lie at the foundation of the taxing power of the state, and have for their purpose the distribution of the burden of taxation evenly and equitably as far as practical. \* \* \* ." See, also, *Mountain States T. & T. Co. v. Animas Mosquito Con. Dist.*, 152 Colo. 73, 380 P. (2d) 560.

■ Section 8 does not provide for uniformity of taxation, but expressly provides for lack of uniformity; it expressly exempts property from taxation in violation of Article X, Section 6. Such legislation is unconstitutional and void.

■ Counsel for the colleges and the state contend that even though Section 8 of the act be unconstitutional, that said section is severable and the remaining provisions of the act are valid. We find no merit in this contention.

The substantive part of the bill is Section 8, designed to raise money. Other portions of the bill are largely, if not entirely, administrative — creation of funds, providing for disposition of monies collected, etc. By the elimination of Section 8, the balance of the bill is sterile and devoid of meaning, and we certainly cannot presume that the legislature would have passed the bill without Section 8 being a part thereof.

The judgment is affirmed.