**Donald Williams, Richard R. Delponte, Adeline E. Tobin, Harvey Halder, Clyde Schiller, Errol G. Schuyler and Jeffrey Roberts v. The City and County of Denver**

No. C-1690

**Jolly Books, Inc., Vincent Lyons, Chris A. Fronaberger, Paul A. Layer, and Burnette W. Allen v. The City and County of Denver**

(607 P.2d 981)

Decided December 3, 1979.        Rehearing denied December 24, 1979.

Arthur M. Schwartz, P.C., Neil Ayervais, for petitioners.

Max P. Zall, City Attorney, Lee G. Rallis, Assistant, Andrew C. Snyder, Assistant, for respondent.

*En Banc.*

JUSTICE ROVIRA delivered the opinion of the Court.

We granted certiorari to review decisions of the Superior Court in criminal cases C-1591 and C-1690. These consolidated cases are concerned with the interpretation and application of a Denver municipal ordinance, hereinafter referred to as the 911 Ordinance, which was designed to classify and license various forms of amusements.

In case C-1591, the petitioners were arrested for operating an adult movie theater without a license in violation of section 911.3-1[1] of the Revised Municipal Code of the City and County of Denver. They instituted an action in Denver District Court challenging certain licensing standards in the 911 Ordinance. As a result of that action, District Court Judge Weinshienk declared subsections 911.7-2(1)(a),[2] 911.7-2(1)(a)(iii),[3] and 911.7-2(2)[4] to be unconstitutional for overbreadth, vagueness, and prior re-

---

[1] ".3-1. Licensed [sic] Required. It shall be unlawful for any person, in any capacity whatsoever, to give, conduct, produce, present, or offer any entertainment mentioned in Section 911.2 hereof without first having applied for and obtained a license so to do; *provided, however,* that no license shall be required when such entertainment is to be given, conducted, produced, presented, or offered in facilities rented or leased from the City and County of Denver for that purpose, or when such entertainment is given, conducted, produced, presented, or offered for patriotic, philanthropic, social service, health, welfare, benevolent, educational, fraternal, or religious purposes, or by a nonprofit organization. (Ord. 45, Series 1959)"

[2] ".7-2(1)(a). Before issuing any such license, the Director of Excise and Licenses shall consider the reasonable requirements of the neighborhood, the desires of the inhabitants as evidence by petitions, remonstrances or otherwise, and all other reasonable restrictions in accordance with the provisions of Subdivision 911.7-2 herein. No such license shall be issued when:"

[3] ".7-2(1)(a)(iii). The information or evidence available to and considered by the Director of Excise and Licenses reasonably establishes that the character or reputation of the applicant or the past record of operation of the establishment or business for which application is made is such so as not to warrant confidence that the establishment or business will be lawfully operated, and that the health, welfare, or morals of the neighborhood may be adversely affected thereby;"

[4] ".7-2(2). No application for such license shall be made for any premises which premises or any portion thereof shall have been the subject of a public hearing conducted by the Director of Excise and Licenses within the immediately preceding twelve month period and which public hearing resulted in a rejection of the proposed application; provided, however, that this limitation shall not apply to those premises or portions thereof for which a different license is proposed and that which was rejected by the Director of Excise and Licenses. (Ord. 746, Series 1974)"

straint, although the trial court attempted to save the ordinance by construing the word "may" in subsection 911.7-2[5] to read "shall." Based on Judge Weinshienk's rulings, the Denver County Court dismissed the criminal charges against petitioners.

In case C-1690, the petitioners, employees of Jolly Books, Inc., were arrested for operating an adult book store and arcade without a license — again, in violation of section 911.3-1. They, too, brought an action in Denver District Court challenging the licensing provisions set forth in sections 911.3-3,[6] 911.13-1,[7] and 911.14-1.[8] Pursuant to that action, Judge Goldberg of the Denver District Court declared those provisions to be unconstitutional for vagueness. Based on his ruling, the Denver County Court dismissed the charges against the petitioners.

The Denver Superior Court reversed both decisions of the county court and reinstated the charges against the defendants. The basis for its ruling was that section 911.3-1 of the 911 Ordinance is independent and severable from the unconstitutional provision. We granted certiorari in both cases in order to review this ruling.

The petitioners dispute two aspects of the superior court's ruling: (1) whether the constitutionally valid provisions of the 911 Ordinance were properly considered severable, and (2) assuming the provisions are severable, whether the prosecution of petitioners can proceed under what is, effectively, a judicially reconstructed statute. Our resolution of the first issue is dispositive of both cases; we therefore need not address the second issue.

---

[5] ".7-2. Inspection and Issuance. Thereupon, before any license be issued, the Director of Excise and Licenses shall make, or cause to be made, an examination of the place for which such license is desired, and if it shall appear that such theater, opera house, auditorium, hall, motion picture house, or other place, is constructed and is being maintained in accordance with the provisions of the ordinances relating to buildings and places of amusement, said Director of Excise and Licenses *may* issue a license to such applicant, which shall entitle the licensee named therein to present, offer, produce, or conduct, at the place designated in such license, entertainments of the first, second, third, or sixth classes, for and during the period of such license." (Emphasis added.)

[6] ".3-3. Grounds for Denial. If the place at which it is desired to offer such entertainment be not a fit or proper place, and not conducted or maintained in accordance with the provisions governing or controlling such places, or if the entertainment desired to be produced or offered be of an immoral or dangerous character, or if the person making application for a license be not of good character, the Manager of Safety and Excise may refuse to approve such application, and no license shall be issued. (Sec. 9)"

[7] ".13-1. It shall be unlawful, under any license hereafter issued, to promote, give, conduct, produce, present or offer, within 500 feet of any area zoned for residential use, any moving picture, or other entertainment through or by one or more automatic moving picture devices or other similar devices, to which persons under 18 years of age could not be lawfully admitted. (Ord. 743, Series 1974)"

[8] ".14-1. Notwithstanding payment of the license fees referred to in Section 911.4 hereof, it shall be unlawful after December 31, 1974, to promote, give, conduct, produce, present or offer at any unlicensed place which is within 500 feet of any area zoned for residential use, any moving picture, or other entertainment through or by one or more automatic moving picture devices or other similar devices, to which persons under 18 years of age could not be lawfully admitted. (Ord. 743, Series 1974)"

■ The proper inquiry for determining the severability of specific provisions in a statutory scheme focuses on whether the constitutionally valid provisions are complete in themselves and can, in turn, be given legal effect. *Shroyer v. Sokol,* 191 Colo. 32, 550 P.2d 309 (1976); *Pike, et al. v. School District No. 11,* 172 Colo. 413, 474 P.2d 162 (1970); section 2-4-204, C.R.S. 1973. In pursuing this inquiry, courts must balance the obligation to construe statutes as constitutional and valid whenever possible against the duty to avoid judicially rewriting statutes in derogation of legislative intent. *See Harding v. Industrial Commission,* 183 Colo. 52, 515 P.2d 95 (1973). In general, if the invalid portions of a statutory scheme are essential and pervasive parts of that scheme, the remaining portions inevitably fail to reflect legislative intent and therefore cannot be given independent legal effect by the judiciary. *See Four-County Metropolitan Improvement District v. Board of County Commissioners,* 149 Colo. 284, 369 P.2d 67 (1962).

■ Turning to the facts of these cases, it is evident from a reading of the 911 Ordinance that the issuance of amusement licenses was not intended to follow automatically upon the applicant's compliance with the zoning, fire safety, sanitation, and building regulations embodied in the ordinance. On the contrary, the Manager of Safety and Excise was expected to give consideration to the "reasonable requirements of the neighborhood," the "good character" of the applicant, and the potentially "immoral or dangerous" nature of the proposed form of entertainment before approving a license application. See sections 911.3-3, 911.7-2(1)(a), and 911.7-2(1)(a)(iii).

The great lengths to which the city council went to authorize this exercise of discretion compels us to conclude that these provisions were essential — and clearly pervasive — portions of the licensing scheme. To hold that the nondiscretionary standards — i.e., the zoning, fire safety, sanitation, and building requirements — represent the sole criteria by which amusement licenses are to be issued would be to judicially rewrite the 911 Ordinance in clear disregard of legislative intent. This we cannot do.

Accordingly, we hold that the constitutionally valid portions of the 911 Ordinance are not severable and, since the discretionary standards were declared unconstitutional,[9] the entire ordinance from section 911.3-1 on must be struck down as unconstitutional.

---

[9] The district court's rulings on the unconstitutionality of the various provisions were not appealed by the respondent and are therefore not before this court. We have therefore limited our discussion to the question of whether the unconstitutional provisions represented an essential and pervasive part of the licensing scheme.

The rulings of the superior court are therefore reversed, and the causes are remanded with instructions to dismiss the charges.