**The PEOPLE of the State of Colorado, Petitioner,**

v.

**John F. DEE, Respondent.**

**No. 80SC199.**

Supreme Court of Colorado,
En Banc.

Nov. 30, 1981.

Dale Tooley, Dist. Atty., Brooke Wunnicke, Chief Appellate Deputy Dist. Atty., Donna Skinner Reed, Deputy Dist. Atty., Denver, for petitioner.

Mitchel B. Johns, Joseph F. Nigro, John F. Dee, Jr., Denver, for respondent.

LOHR, Justice.

As the result of a jury trial in Denver County Court, the defendant was convicted of driving under the influence of intoxicating liquor in violation of section 42-4-1202(1)(a), C.R.S.1973. He appealed to the Denver Superior Court. That court reversed his conviction and remanded the case for retrial based on the conclusion that a test to determine the alcoholic content of the defendant's blood was conducted under circumstances which violated statutory standards and that, as a consequence, the results of that test should have been suppressed. We granted certiorari and now reverse the superior court's ruling and direct that the case be remanded to the trial court for reinstatement of the original judgment and sentence.

The evidence reflects that on the evening of December 21, 1976, the defendant, accompanied by his wife, was driving his automobile to McNichols Arena to attend a basketball game. As he left highway I-25, he was observed by three Denver policemen who were sitting in a patrol car to warm up after directing the heavy pre-game traffic. They noted that his vehicle was weaving and not staying in its lane. The defendant stopped his automobile near the patrol car on his own initiative, walked to the officers' vehicle and requested permission to use a blocked-off street to obtain access to his assigned parking space near the arena. One of the officers denied that permission and advised the defendant how to reach his parking space by traveling on streets then open to traffic. The defendant started to return to his car but then walked back to the police vehicle, where he and the officers exchanged words. The evidence is in conflict as to what was said, but the officers formed the opinion from the defendant's appearance, demeanor, walk, speech, and the odor of alcoholic beverage on his breath that he was under the influence of intoxicating liquor. Noting that the defendant had been driving a vehicle while in this condition, they arrested him and took him to the police station in the patrol car. Before entering the police vehicle, the defendant defecated in his trousers.[1]

Upon arrival at the station the defendant was given a visual sobriety test, including walking a line heel-to-toe and picking up poker chips from the floor. His performance of these tasks was filmed.

After the filming, but before collecting a breath sample, the officers allowed the defendant to use the bathroom, where he cleansed himself as well as he was able. The breath test was then administered by use of a gas chromatograph intoximeter and reflected a blood alcohol content of .136.[2] At trial the parties stipulated to the results of the test, and this evidence was presented to the jury without objection. The jury found the defendant guilty as charged.

The defendant appealed to the Denver Superior Court, asserting several bases for error, including the failure of the trial court to suppress the breath test results. This ground was raised for the first time in the defendant's motion for a new trial and is based on the claim that the breath sample was taken in violation of the statutory requirement that such tests be administered "with utmost respect for the constitutional rights, dignity of person, and health of the

---

1. The defendant testified without contradiction that he was under medication for treatment of highly painful gouty arthritis in his wrist and that the side effects of the medication included periodic uncontrollable bowel movements.

2. An alcohol content of 0.10% or more by weight per volume in the defendant's blood creates the presumption that the defendant was under the influence of alcohol. Section 42-4-

1202(2)(c), C.R.S.1973 (1980 Supp.). The trial court orally instructed the jury, without objection, that the accuracy of the test method was within 10%, so they should deduct .0136, for a resultant reading of .122. This instruction was based in part on the parties' stipulation that the test machine appeared to be in proper working order and that it was properly operated by a qualified person.

person being tested." Section 42–4–1202(3)(b), C.R.S.1973. The defendant contended that suppression of the results was the appropriate remedy for the alleged violation.

Initially, the superior court affirmed the conviction. Later, however, it reconsidered its decision, reversed the judgment of conviction, and remanded the case to the county court for retrial. The revised ruling was based solely on the court's conclusion that "the [breath] test was improperly administered, that it violated the dignity of the person of the defendant to take the test after he had defecated in his pants and without permission to use a toilet." We granted certiorari to review the superior court's ruling.

The defendant argues that the disputed ruling is interlocutory and not subject to review on certiorari. The district attorney disagrees. He asserts that the superior court's conclusion that the defendant's rights were violated in administration of the breath test is incorrect and unsupported by the evidence. The district attorney further claims that even if the ruling was proper, suppression of the evidence is not the appropriate remedy. We conclude that certiorari review of the superior court's reversal of the county court's judgment is appropriate and that no rights of the defendant were violated in administering the breath test. Accordingly, we reverse the superior court's decision.

## I.

We find no merit in the contention that the superior court's reversal of the county court judgment was an interlocutory order not subject to our certiorari review.

■ Appellate jurisdiction to review county court judgments lies in the superior court in counties where such a court has been established.[3] Section 13–6–310(2), (3), C.R.S.1973. Among the remedies available to the superior court if its review of the record on appeal discloses error is the rever-

sal of the county court judgment and remand of the case for a new trial. *Id.* "Further appeal to the supreme court from a determination of . . . the superior court in a matter appealed to such court from the county court may be made only upon writ of certiorari issued in the discretion of the supreme court, and pursuant to such rules as that court may promulgate." Section 13–6–310(4), C.R.S.1973; *see also* C.A.R. 49 and 52(a). The legislative authorization for "further appeal" is not limited to cases where the superior court's determination would otherwise end the matter, as in an affirmance of the trial court's judgment.

■ Moreover, we have declared that "[o]ur certiorari procedure for review of superior court judgments is identical in nature to the procedure for review of court of appeals' decisions." *People ex rel. Union Trust Co. v. Superior Court*, 175 Colo. 391, 396; 488 P.2d 66, 68 (1971). We frequently review by certiorari the rulings of the court of appeals reversing a trial court judgment and remanding the case for retrial, *e.g., People v. Gonzales*, 198 Colo. 450, 601 P.2d 1366 (1979); *Tompkins v. DeLeon*, 197 Colo. 569, 595 P.2d 242 (1979); *Union Supply Co. v. Pust*, 196 Colo. 162, 583 P.2d 276 (1978), or for further proceedings, *e.g., Dooley v. Cal-Cut Pipe & Supply, Inc.*, 197 Colo. 362, 593 P.2d 360 (1979); *Strickland v. People*, 197 Colo. 488, 594 P.2d 578 (1979). We also have reviewed by certiorari the ruling of a district court reversing a county court judgment and remanding the case for a new trial, *People v. Norman*, 194 Colo. 372, 572 P.2d 819 (1977), and the ruling of the Denver Superior Court reversing a county court judgment and remanding the matter for further proceedings, *Williams v. City and County of Denver*, 198 Colo. 573, 607 P.2d 981 (1979).[4]

We conclude that review of the superior court judgment by certiorari is appropriate.

## II.

The superior court reversed the judgment solely on the basis of its conclusion that the

---

**3.** Denver is the only county having a superior court. *See* section 13–7–101, C.R.S.1973.

**4.** For purposes of the present case, we discern no difference between certiorari review of district court and superior court judgments. In reviewing a county court decision, each exer-

breath test should have been suppressed because of a violation of section 42–4–1202(3)(b), C.R.S.1973, which provides:

> The test [*i.e.*, blood, breath or urine] shall be administered at the direction of the arresting officer having reasonable grounds to believe the person to have been driving a motor vehicle while under the influence of, or impaired by, alcohol and in accordance with rules and regulations prescribed by the State Board of Health, *with utmost respect for the* constitutional rights, *dignity of person*, and health *of the person being tested . . .* (Emphasis added).

■ Initially, we note that the defendant not only failed to request suppression of the test results but also stipulated to those results and permitted them to be received in evidence without objection. In his motion for a new trial the defendant asserted for the first time that the evidence should have been suppressed. Absent a showing of plain error, which does not exist here, the defendant has waived any right to object on appeal to the admission of this evidence. *E.g., People v. Taggart*, Colo., 621 P.2d 1375 (1981); *People v. Quintana*, 189 Colo. 330, 540 P.2d 1097 (1975); *Lucero v. People*, 158 Colo. 568, 409 P.2d 278 (1965). Moreover, even if the objection had been properly preserved, we find it to be without merit.

■ The defendant's condition, although unfortunate, was not caused by the police. The superior court's statement that the defendant was not permitted to use the restroom before the test is not supported by the record. To the contrary, the officers honored the defendant's request to use the restroom before the challenged test was given. In order to obtain a valid test it was necessary that it be accomplished with reasonable promptness before the evidence dissipated. Some personal indignity was in-

herent in the situation with which the officers were confronted. The police conduct here reflected no lack of respect for the dignity of the defendant's person.[5]

We reverse the judgment of the superior court and remand the case to that court for further remand to the county court with directions that the judgment of conviction and sentence originally entered be reinstated.

---

cises an identical appellate function. The only difference between the two courts is that, where superior courts have been established (a situation existing in Denver only), appeals from the county court are taken to the superior court rather than the district court. Section 13–6–310(3), C.R.S.1973.

**5.** The statute prescribes no remedy for its violation. Whether suppression of the test results is an appropriate judicially created remedy, as the superior court ruled, is a question we need not reach because we have concluded there was no statutory violation.