Rudolph K. STIENS, John P. Hager, Ed Veglia, and William Baker, Plaintiffs-Appellants,

v.

FIRE AND POLICE PENSION ASSOCIATION; Castlewood Fire Protection District and Its Board of Directors; Castlewood Firemen's Pension Fund and Its Board of Trustees; City and County of Denver; Firemen's Pension Fund of the City and County of Denver; Police Pension and Relief Board of the City and County of Denver; Special District Association, Defendants-Appellees.

No. 82SA368.

Supreme Court of Colorado, En Banc.

June 4, 1984.

Brauer & Buescher, P.C., Thomas B. Buescher, Dennis E. Valentine, Denver, for plaintiffs-appellants.

Tallmadge, Tallmadge, Wallace & Hahn, P.C., C. Thomas Bastien, Cynthia A. Calkins, Denver, for defendant-appellee Fire and Police Pension Assn.

Stephen H. Kaplan, City Atty., Darlene M. Ebert, Brian H. Goral, Asst. City Attys., Denver, for defendants-appellees Firemen's Pension Fund, and Police Pension and Relief Bd. of the City and County of Denver, and the City and County of Denver.

Calkins, Kramer, Grimshaw & Harring, Charles E. Norton, Matthew R. Dalton, Denver, for defendant-appellee Special Dist. Assn.

LOHR, Justice.

The plaintiffs, Colorado fire fighters and police officers first hired between April 8, 1978, and July 1, 1981, sought a declaratory judgment to establish that the Policemen's and Firemen's Pension Reform Law, as embodied in three acts,[1] was retroactive legislation as applied to them, and therefore unconstitutional. The defendants are various public bodies associated with the administration of public employees' pensions. Certain of the defendants filed motions to dismiss, and a motion for judgment on the pleadings. The trial court granted these motions, and directed entry of final judgment for the moving defendants pursuant to C.R.C.P. 54(b).[2] We affirm.

## I.

The plaintiffs' claim is based on a chronology involving three acts of the legislature and one decision by this court. The 1978 Act is the first of these. It resulted from a Colorado Legislative Council Committee study reporting that fire fighters' and police officers' pension funds statewide had estimated unfunded accrued liabilities of approximately $500,000,000, and was intended as an interim measure pending design of a more complete remedy. *City of Colorado Springs v. State*, 626 P.2d 1122, 1124 (Colo.1981). Its primary purpose is apparent from the legislative declaration, which stated that "the establishment of statewide actuarial standards regarding funded and unfunded liabilities of policemen's and firemen's pension funds established pursuant to [§§ 31–30–301 to –620, 12 C.R.S. (1977)] is a matter of statewide concern affected with a public interest

...." Ch. 98, sec. 1, § 31–30–802, 1978 Colo.Sess.Laws 446. The previous statutory scheme for Colorado fire fighters and police officers contained no requirement that the pension plans be actuarially sound. § 31–30–301 to –620, 12 C.R.S. (1977); *Huff v. Mayor and City Council of Colorado Springs*, 182 Colo. 108, 512 P.2d 632 (1973). To address this concern, the General Assembly in the 1978 Act created minimum funding standards increasing local contributions so that accrued unfunded pension liability would be reduced and eventually eliminated.[3] It increased the portion of state revenues earmarked for pension benefits.[4] It provided for an actuarial study of all police officers' and fire fighters' pension funds.[5] It created a Policemen's and Firemen's Pension Reform Commission comprised of legislators to develop proposed legislation to effect a more complete remedy.[6] Finally, in the provision central to this litigation, the General Assembly provided that none of the benefits of the previous statutory scheme would vest in employees hired after the effective date of the act:

Every employee employed as a fireman or policeman for the first time after the effective date of this [act] shall be covered by the benefit provisions set forth in or authorized by [the previous statutory scheme] until the creation of a new statewide retirement system in which he shall be a member but shall not be vested in any benefits provided or authorized by [the previous scheme]. Each employer shall notify any such employee of his limited rights under a pension plan creat-

1. Ch. 98, 1978 Colo.Sess.Laws 446; ch. 316, 1979 Colo.Sess.Laws 1189; ch. 379, 1981 Colo.Sess.Laws 1534. These will be referred to throughout the opinion as the 1978 Act, the 1979 Act and the 1981 Act, respectively.

2. The trial court entered judgment of dismissal in favor of all the defendants except Castlewood Fire Protection District and its Board of Directors, and Castlewood Firemen's Pension Fund and its Board of Trustees. These two sets of defendants did not move for dismissal.

We determined that jurisdiction over the appeal is in this court because the constitutionality

of a statute is in question. *See* §§ 13–4–102(1)(b) and 13–4–110(1)(a), 6 C.R.S. (1973).

3. Ch. 98, sec. 1, § 31–30–804(1)–(3), (8), (10)–(13), 1978 Colo.Sess.Laws 446, 447–48, 450–51.

4. Ch. 98, secs. 2–3, §§ 31–30–303, 31–30–404, 1978 Colo.Sess.Laws 446, 453.

5. Ch. 98, sec. 1, § 31–30–804(4)–(7), 1978 Colo.Sess.Laws 446, 449–50.

6. Ch. 98, sec. 1, § 31–30–901, 1978 Colo.Sess.Laws 446, 452–53.

ed or authorized pursuant to [the previous scheme].

Ch. 98, sec. 1, § 31–30–804(9), 1978 Colo. Sess.Laws 446, 451. The 1978 Act was approved on April 7, 1978.

The 1979 Act, the second act among the three at issue, created the new statewide retirement system foreshadowed by the non-vesting provision in § 31–30–804(9), and by the 1978 Act as a whole. In the legislative declaration of the 1979 Act, the General Assembly reiterated its concern that police officers' and fire fighters' pension plans be actuarially sound. It also stated that the establishment of such pension plans was a matter of statewide concern, that the ability to pay earned benefits was a necessary corollary to this, and that state monies were to be contributed to such pension plans in recognition of current local financial burdens, not as a continuing obligation. Ch. 316, sec. 1, § 31–30–1001, 1979 Colo.Sess.Laws 1189. Accordingly, the legislature formed a fire and police pension association to administer the new system; created a fire and police members' benefit fund supported by employer, member and state contributions, existing funds, and other sources; provided for retirement, disability and survivor benefits; established procedures for adjustment and termination of benefits and return and transfer of contributions; and prescribed who was to be covered by the new system. In particular, with exceptions not relevant to this case, the 1979 Act stated that "every [police or fire] employer in this state shall provide the pension benefits of the [new system] for members hired on or after April 8, 1978," i.e., after the 1978 Act went into effect. Ch. 316, sec. 1, § 31–30–1003(1), 1979 Colo.Sess.Laws 1189, 1190. It also stated that "[e]very employee employed as a fireman or policeman for the first time after April 7, 1978, shall be covered by the benefit provisions set forth in

or authorized by [the new system]." Ch. 316, sec. 14, § 31–30–804(9), 1979 Colo. Sess.Laws 1189, 1205. Pension plan members hired before April 8, 1978, were required to elect irrevocably between the previous scheme and the new system. Ch. 316, sec. 1, § 31–30–1003(3)(b), 1979 Colo. Sess.Laws 1189, 1191. The 1979 Act was approved on June 22, 1979, to take effect January 1, 1980.

In *City of Colorado Springs v. State*, 626 P.2d 1122 (Colo.1981), this court struck down the provisions of the 1978 Act mandating local contributions in excess of one mill to cover unfunded accrued pension liabilities. We held that they were retrospective laws contravening Article XV, Section 12 of the Colorado Constitution. We also held that imposing on municipalities sole liability for paying prospective current service costs of pension benefits attributable to current members was constitutional, but that the provisions in the 1978 Act creating such liability were nevertheless invalid because of an unseverability clause in that act.[7] We stated,

> [t]he legislative intent could not be more free from doubt. Notwithstanding the intrinsic constitutionality of the requirement that municipalities bear prospective annual service costs of firemen's pension funds, that requirement is invalid because expressly declared not to be severable from the unconstitutional mandate that municipalities pay unfunded accrued liabilities of such funds.

*Id.* at 1130. Only the minimum funding standards increasing local contributions were challenged in that case. *City of Colorado Springs* was decided on December 15, 1980, and modified on denial of rehearing on March 23, 1981.

The 1981 Act, the third act at issue here, promulgated modified minimum funding standards in place of those in the 1978 Act

---

7. Under ch. 98, sec. 1, § 31–30–806, 1978 Colo. Sess.Laws 446, 451–52:

> If any provision of this part 8 is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of this part 8 shall be deemed invalid, it being the

intent of the general assembly that the provisions of this part 8 are so essentially and inseparably connected with and so dependent upon each other that each is incomplete and incapable of being executed independent of the others.

declared unconstitutional or otherwise invalid in *City of Colorado Springs.*[8] It reiterated the legislature's concern that statewide actuarial standards be established.[9] It also provided that "[e]very employee employed as a fireman or policeman for the first time after April 7, 1978, shall be covered by the benefit provisions set forth in or authorized by [the new system]."[10] This is the same language as that employed in the 1979 Act. The 1981 Act was approved on June 10, 1981, to take effect July 1, 1981.

## II.

The plaintiffs reason that since part of the minimum funding standards in the 1978 Act were struck down as unconstitutional in *City of Colorado Springs,* and since other provisions in the 1978 Act setting forth minimum funding standards were declared invalid because of the unseverability clause in the act, it follows that the provision preventing the vesting of benefits under the previous statutory scheme in fire fighters and police officers hired after the effective date of the 1978 Act is also unseverable and invalid. They conclude that as a result the provisions in the 1979 Act and the 1981 Act incorporating these employees into the new system constitute retrospective legislation forbidden by Article II, Section 11 of the Colorado Constitution and ex post facto laws violating Article I, Section 10 of the United States Constitution.[11] Evaluation of this argument requires some discussion of the principles of severability.

Our analysis begins with this court's decision in *City of Lakewood v. Colfax Unlimited Ass'n,* 634 P.2d 52 (Colo.1981), where we held that

[a]s a general rule, if a statute or ordinance is constitutional in one part and unconstitutional in another, the constitutional provision may be sustained and the unconstitutional stricken.... Whether unconstitutional provisions are excised from an otherwise sound law depends on two factors: (1) the autonomy of the portions remaining after the defective provisions have been deleted and (2) the intent of the enacting legislative body.

*Id.* at 70.

It is clear that the portion of the 1978 Act under challenge here is autonomous from the provisions earlier declared unconstitutional. The non-vesting provisions at issue in the present case prevented new employees from obtaining vested rights under pension plans created or authorized pursuant to prior law, while still providing the new employees with benefit coverage under those plans pending creation of a new statewide retirement system. This freezing provision prevented perpetuation of a system that allowed vesting of benefits for which no adequate funding scheme existed. It was completely separate from and independent of the portions of the 1978 Act establishing the interim funding scheme enacted to address the financial plight of existing pension funds. In contrast, the provisions of the 1978 Act for paying prospective annual current service costs and those for funding the unfunded accrued liabilities of existing pension plans were interwoven parts of a single interim financing scheme to begin to remedy the actuarially unsound condition of existing pension funds. This close relationship between the unconstitutional retrospective funding provisions of the 1978 Act and the prospective portion of the funding scheme, considered in the portion of *City of Colora-*

---

8. Ch. 379, sec. 1, § 31-30-805(1)-(5), (8)-(10), 1981 Colo.Sess.Laws 1534, 1535-38.

9. Ch. 379, sec. 1, § 31-30-802, 1981 Colo.Sess. Laws 1534.

10. Ch. 379, sec. 1, § 31-30-805(6), 1981 Colo. Sess.Laws 1534, 1537.

11. The plaintiffs assert that their constitutional challenges include impairment of the obligation of contracts, as proscribed by each of the cited

constitutional provisions, even though not specifically mentioned in their pleadings. Our disposition of this case makes it unnecessary to consider whether they have raised and preserved these issues. We also observe that the prohibition of ex post facto laws has long been construed as limited to criminal or penal measures. *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 390, 397, 1 L.Ed. 648 (1798).

*do Springs* discussing the effect of the unseverability clause, is not present with respect to the non-vesting provisions. Thus, the autonomy criterion, referred to in *City of Lakewood v. Colfax Unlimited Ass'n,* imposes no barrier to holding the non-vesting provisions of the 1978 Act severable and therefore constitutional.

The issue of legislative intent presents a more difficult question. The principle of severability is a longstanding one in Colorado, traceable in part to Article V, Section 21 of the Colorado Constitution, which states that "if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." *See Catron v. Board of County Commissioners,* 18 Colo. 553, 33 P. 513 (1893). The legislature has enacted a qualified severability statute of general applicability mandating severance

> unless it appears to the court that the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court determines that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

§ 2–4–204, 1B C.R.S. (1980). This provision codifies Colorado case law. *See People ex rel. Tucker v. Rucker,* 5 Colo. 455 (1880); *see also Home Owners' Loan Corp. v. Public Water Works District No. 2,* 104 Colo. 466, 92 P.2d 745 (1939) (omission of severability clause immaterial).

The special unseverability clause in the 1978 Act prevails as an exception to the general severability clause of § 2–4–204. § 2–4–205, 1B C.R.S. (1980); *see People v. Vinnola,* 177 Colo. 405, 494 P.2d 826 (1972). However, it is not conclusive as to legislative intent. It gives rise only to a presumption that, if the unconstitutional parts of an Act were eliminated, the legislature would not have been satisfied with what remained. *See City of Lakewood v. Colfax Unlimited Ass'n,* 634 P.2d at 70 (severability clause creates presumption that legislature would have been satisfied with what remained); *Smith Brothers Cleaners & Dyers v. People ex rel. Rogers,* 108 Colo. 449, 119 P.2d 623 (1941) (severability clause is an aid in determining legislative intent).[12]

The unseverability clause in the 1978 Act is categorical, without qualification, but this is insufficient to resolve the issue. In two previous cases this court has considered a categorical severability clause, and has held that the presumption of severability raised thereby had been overcome. In *City of Lakewood v. Colfax Unlimited Ass'n,* 634 P.2d at 70, the presumption was overcome by "defects ... so pervasive that [the Lakewood Sign Code] must be invalidated in its entirety."[13] In *People v. Morgan,* 79 Colo. 504, 246 P. 1024 (1926), the presumption was overcome "from the standpoint of legislative intent" as evinced by the statutory scheme, and because of the interdependence of different sections of the challenged act.[14] *Id.* at 509, 246 P. at

---

**12.** A review of Colorado case law on severability clauses makes it apparent that the close scrutiny they often have received represents a narrow exception to the general rule that, when a clause is unambiguous, construction is unnecessary. For an expression of that general rule, *see, e.g., Lassner v. Civil Service Commission,* 177 Colo. 257, 493 P.2d 1087 (1972). This is because otherwise severability clauses might work to nullify the legislative intent embodied in the remainder of an act.

**13.** The severability provision in *City of Lakewood* provided that:
> If for any reason, any one or more sections, sentences, clauses or parts of the Sign Code

are held invalid, such judgment shall not affect, impair or invalidate the remaining portions of this Sign Code, but shall be confined in its operation to the specific sections, clauses or parts of this ordinance held invalid. The invalidity of any section, sentence, clause or part of this ordinance in any one or more instances shall not affect or prejudice in any way the validity of this Sign Code in any other instance.

*Id.* 634 P.2d at 70 n.24.

**14.** The severability provision in *Morgan* read, "[i]f any section, paragraph, clause, word or phrase in this Act shall be declared unconstitutional, the invalidity thereof shall not affect the

1026. *See also Crawford v. City and County of Denver,* 156 Colo. 292, 398 P.2d 627 (1965).[15] We must now consider whether the presumption of unseverability raised by the unseverability clause in the 1978 Act can be sustained.

Against the presumption of unseverability, there arises the consideration that the avowed purpose of the 1978 Act, to establish statewide actuarial standards for pension liabilities, would be frustrated in significant measure by a holding of unseverability. We held in *City of Colorado Springs* that this purpose was constitutional insofar as it was prospective. The previous statutory scheme did not require that the pension plans be actuarially sound, while actuarial integrity is the central feature of the new system. As noted above, the 1978 Act was an interim measure designed to minimize perceived pension problems pending the design of the more complete remedy embodied in the 1979 Act. *City of Colorado Springs,* 626 P.2d at 1124 n. 3. If the plaintiffs are correct in concluding that the unseverability and invalidity of all of the 1978 Act renders their inclusion in the new system retrospective legislation, then all fire fighters and police officers hired after the passage of the 1978 Act and before the passage of the 1981 Act fall outside the plan for creation of statewide actuarial standards as effectuated by the 1979 Act. The practical effect of unseverability appears contrary to legislative intent as expressed in the legislative declaration of the 1978 Act, notwithstanding the invalidity of the pension contribution provisions declared unconstitutional in *City of Colorado Springs.* Yet, we should construe a statute to afford a remedy to the

problem the legislature has recognized. *Id.* at 1126; *see* § 2–4–203(1)(a), 1B C.R.S. (1980); *City and County of Denver v. Lynch,* 92 Colo. 102, 18 P.2d 907 (1932). Such a remedy is afforded only if the non-vesting provision of the 1978 Act is construed as severable.

Also militating against the presumption of unseverability is the consideration that the legislature clearly and unequivocally expressed its desire in both the 1979 Act and the 1981 Act that fire fighters and police officers hired after April 7, 1978, be covered by the new system.[16] The plaintiffs question the constitutionality of these enactments, but this argument does not undercut their probative value in illuminating legislative intent. No party argues that the later acts are inapposite. We have held that later acts of the General Assembly may be relevant in resolving a severability question. *Ohio-Colorado Mining & Milling Co. v. Elder,* 47 Colo. 63, 99 P. 42 (1908).

On balance, we conclude that the presumption of unseverability has been overcome. Despite conflicting indications, it appears that the legislature intended that the prospective non-vesting provision of the 1978 Act remain effective if the retrospective minimum funding standards were struck down as unconstitutional. Therefore, the plaintiffs' claim that employment of the effective date of the 1978 Act to determine which employees are covered by the new system under the 1979 Act and the 1981 Act constitutes retrospective legislation has no basis; and the trial court prop-

---

remainder of this Act." *Id.* at 507, 246 P. at 1025.

**15.** This court has held on several occasions that a statute was unseverable notwithstanding the legislative intent evinced by a general qualified severability statute extrinsic to the statute under consideration. *E.g., Williams v. City and County of Denver,* 198 Colo. 573, 607 P.2d 981 (1979); *People v. Vinnola,* 177 Colo. 405, 494 P.2d 826 (1972); *Colorado Project—Common Cause v. Anderson,* 177 Colo. 402, 495 P.2d 218 (1972); *Pueblo Junior College District v. Donner,* 154 Colo. 26, 387 P.2d 727 (1963). Such a severabil-

ity statute is now found at § 2–4–204, 1B C.R.S. (1980).

**16.** It is worthy of note that beginning with the passage of the 1978 Act all newly-hired fire fighters and police officers also were on notice that they would acquire no vested rights to benefits authorized by the previous statutory scheme. *See* ch. 98, sec. 1, § 31–30–804(9), 1978 Colo.Sess.Laws 446, 451; ch. 316, sec. 14, § 31–30–804(9), 1979 Colo.Sess.Laws 1189, 1205.

erly entered judgment against the plaintiffs. The judgment is affirmed.

QUINN, J., dissents.

ERICKSON, C.J., and ROVIRA, J., join in the dissent.

QUINN, Justice, dissenting:

I dissent. In *City of Colorado Springs v. State*, 626 P.2d 1122 (Colo.1981), we held that the 1978 version of the Policemen's and Firemen's Pension Reform Act, ch. 98, 1978 Colo.Sess.Laws 446, constituted retrospective legislation in violation of Article XV, Section 12 of the Colorado Constitution. Although we found no constitutional infirmity in that portion of the statute requiring municipalities to pay the prospective annual current service costs of pension benefits attributable to active members, we nonetheless held that this constitutionally imposed municipal burden was not severable from the unconstitutional component of the statute. We thus concluded:

"The legislature has treated the severability question specifically in the final section of the Pension Reform Act, section 31-30-806, C.R.S.1973 (1977 Repl. Vol. 12) (1980 Supp.) as follows:

'If any provision of this part 8 is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of this part 8 shall be deemed invalid, it being the intent of the general assembly that the provisions of this part 8 are so essentially and inseparably connected with and so dependent upon each other that each is

incomplete and incapable of being executed independent of the others.'

The legislative intent could not be more free from doubt. Notwithstanding the intrinsic constitutionality of the requirement that municipalities bear prospective annual service costs of firemen's pension funds, that requirement is invalid because expressly declared not to be severable from the unconstitutional mandate that municipalities pay unfunded accrued liabilities of such funds." 626 P.2d at 1129-30.

It necessarily follows from our conclusion that the 1978 Act, including the nonvesting provision .at issue here, is invalid and incapable of execution in its entirety. As a general matter, a statute which is declared unconstitutional is treated as if it had never been passed. *E.g., City and County of Denver v. McNichols*, 129 Colo. 251, 260, 268 P.2d 1026, 1030 (1954); *Coulter v. Board of County Commissioners*, 9 Colo. 258, 267, 11 P. 199, 203–04 (1886). "[A]n unconstitutional act is not a law, and can neither confer a right or immunity nor operate to supersede any existing valid law." *Chicago, Indianapolis & Louisville Railway Co. v. Hackett*, 228 U.S. 559, 566, 33 S.Ct. 581, 584, 57 L.Ed. 966 (1913);[1] *see generally, e.g., Ex parte Siebold*, 100 U.S. 371, 25 L.Ed. 717 (1879); *People v. Manuel*, 94 Ill.2d 242, 68 Ill.Dec. 506, 446 N.E.2d 240 (1983); *Hunter v. School District*, 97 Wis.2d 435, 293 N.W.2d 515 (1980).

Notwithstanding the invalidity of the entire 1978 Act, the majority nevertheless restores vitality to the Act's nonvesting provision. By reason of our holding in

---

**1.** The United States Supreme Court has tempered this statement in *Hackett* by refusing to always treat a statute judicially determined to be unconstitutional as if it never existed. "The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored." *Dobbert v. Florida*, 432 U.S. 282, 298, 97 S.Ct. 2290, 2300, 53 L.Ed.2d 344 (1977) (quoting *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374, 60 S.Ct. 317, 318, 84 L.Ed. 329 (1940)). Thus, it might be appropriate for a court in some circumstances to fashion appropriate equitable relief for the purpose of relieving a hardship occasioned by detrimental

action taken in reliance on a statute prior to its judicial invalidation. *See, e.g., Lemon v. Kurtzman*, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) (plurality opinion); *City of Phoenix v. Kolodziejski*, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970); *Cipriano v. City of Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); *Allen v. State Board of Elections*, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969). In the instant case, however, any such argument relating to detrimental action that might have been taken by the defendants involves an issue of fact which could not have been resolved by a judgment on the pleadings. ·

*City of Colorado Springs,* however, that part of the Act ceased to have any legal existence or effect. The majority's decision in this case not only contravenes the unambiguous intent of the legislature that any provision of the 1978 Act was to be deemed incapable of execution independently of any other provision but, more important, revives what previously had been declared to be a constitutionally inoperative law.

Because I believe the construction of the nonseverability clause adopted by this court in *City of Colorado Springs* was correct, I would reverse the trial court's entry of summary judgment against the plaintiffs and remand the case for further proceedings on the plaintiffs' claim that the 1979 and 1981 Acts, which became effective on January 1, 1980, and July 1, 1981, respectively, constitute impermissible retrospective legislation as applied to the plaintiffs' asserted rights in local pension plans preexisting the 1979 and 1981 Acts and thus, according to the plaintiffs, violate Article I, Section 10(1) of the United States Constitution and Article II, Section 11 of the Colorado Constitution.

I am authorized to say that ERICKSON, C.J., and ROVIRA, J., join in this dissent.